AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO, peticionaria, *v.* ROBERTO IÑESTA NAZARIO, recurrido.

*Número:* CC-2004-622     *Resuelto:* 19 de octubre de 2005

*Grace M. Santana Balado* y *Eric Y. Reyes Colón*, abogados de la parte peticionaria; *Amarilys González Alayón*, abogada de la parte recurrida.

La Juez Asociada Señora Rodríguez Rodríguez emitió la opinión del Tribunal.

Nos corresponde resolver en esta ocasión si, transcurridos más de dos años de haber finalizado un procedimiento de expropiación forzosa, procede autorizar la intervención

de un acreedor hipotecario, quien advino como tal con posterioridad a la presentación de la petición pero antes de la vista de justa compensación, y quien no había sido notificado del procedimiento pendiente.

## I

El 14 de marzo de 2001, la Autoridad de Carreteras y Transportación de Puerto Rico (Autoridad o A.C.T.) presentó ante el Tribunal de Primera Instancia una petición de expropiación forzosa para la adquisición de una parcela de terreno localizada en la Sección Sur del Barrio Santurce, denominado Tras Miramar, con cabida de 140.00 metros cuadrados. Dicho terreno era necesario para llevar a cabo el proyecto ACT-002682 "Highway P.R. 26 & Muñoz Rivera Expressway", según se hizo constar en la Declaración de Utilidad Pública para la Adquisición y Entrega Material de la Propiedad, que acompañó la petición.

Junto a la petición presentada, la A.C.T. consignó la cantidad estimada como justo valor de la propiedad, que ascendió a $114,000. El legajo de expropiación forzosa estuvo acompañado también con una certificación registral expedida el 23 de mayo de 2000, actualizada al 13 de diciembre de ese mismo año.[1]

En atención a la información que se desprende de la certificación registral, la Autoridad incluyó como partes con interés al Sr. Roberto Iñesta Nazario, como titular de la propiedad; a la Corporación del Fondo del Seguro del Estado, por tener inscrito un embargo sobre la propiedad; al Centro de Recaudación de Ingresos Municipales (C.R.I.M.), por concepto de las contribuciones que se le adeudasen, y a John Doe y Richard Roe, como nombres ficticios para designar a cualquier persona natural o jurí-

---

[1] La finca objeto de la expropiación consta inscrita en el Folio 41, vuelto del Tomo 149 de Santurce Sur, Finca número 3427, del Registro de la Propiedad, Sección Primera de San Juan.

dica que pudiera tener interés en la propiedad a expropiarse.

El 21 de marzo de 2001, el Tribunal de Primera Instancia emitió la resolución de investidura de título, traspasando así el título de dominio absoluto sobre la propiedad en controversia a la Autoridad. En esa misma fecha, el tribunal dictó una orden en la que señaló la fecha de la vista para discutir la valoración de la propiedad expropiada: 6 de junio de 2001. Llegada esa fecha, la parte con interés no compareció y se reprogramó para septiembre. En septiembre se le informó al tribunal que las partes habían llegado a un acuerdo transaccional sobre el justo valor de la propiedad expropiada.

El titular registral de la propiedad, el señor Iñesta Nazario, había comparecido al tribunal para solicitar el retiro de los fondos consignados bajo protesta, alegando que la suma consignada no representaba el justo valor en el mercado de la parcela expropiada. En su comparecencia, Iñesta Nazario incluyó una carta de la Corporación del Fondo de Seguro del Estado, que acreditaba a su favor la cancelación de la deuda que aparecía inscrita en el Registro de la Propiedad.

Las partes presentaron en el tribunal la estipulación el 9 de octubre de 2001 y en ésta se dispuso como justo valor la cantidad de $150,000. El 31 de octubre, el Tribunal de Primera Instancia acogió la estipulación presentada y emitió su sentencia a tales efectos. En ella, se ordenó a la Autoridad que consignara el exceso acordado como justo valor y que eliminara los nombres ficticios John Doe y Richard Roe de la petición por carecer de interés en este procedimiento. El señor Iñesta, en diciembre de 2001, retiró la suma adicional y satisfizo para sí la totalidad del justo valor de la propiedad expropiada.

El 23 de octubre de 2003 —transcurridos más de dos años desde que el tribunal de instancia emitió la sentencia— el Sr. Orlando C. Figueroa Burgos, su esposa Sra. María F. Cruz Gómez y la Sociedad Legal de Gananciales compuesta por ambos (esposos Figueroa-Cruz) solicitaron

una autorización para intervenir en el caso de epígrafe. Alegaron en la moción que acompañó la demanda de intervención que el señor Iñesta Nazario había suscrito un pagaré hipotecario por la suma de $24,200, más intereses, garantizado con una hipoteca sobre la finca expropiada otorgada mediante escritura pública el 16 de enero de 1999, cuyo tenedor y poseedor era el señor Figueroa Burgos.(2) Se informó que se documento se presentó para inscripción en el Registro de la Propiedad el 16 de marzo de 2001, dos días después de presentada la petición de expropiación.

En la solicitud de intervención el señor Figueroa Burgos le informó al tribunal que ante el incumplimiento del señor Iñesta con su obligación, la declaró vencida e instó el correspondiente pleito en cobro de dinero y ejecución de hipoteca por la vía ordinaria.(3) En este pleito el tribunal dictó sentencia en rebeldía el 26 de septiembre de 2002. Condenó al Sr. Roberto Iñesta Nazario a satisfacer a Figueroa Burgos la cantidad de $24,200, más intereses y honorarios de abogado.

Advenida final y firme la sentencia en el caso de cobro de dinero, se expidió el correspondiente mandamiento para autorizar la venta del inmueble en pública subasta. La subasta se llevó a cabo el 30 de abril de 2003 y la buena pro le fue adjudicada a los esposos Figueroa-Cruz. Sin embargo, al tratar de hacer valer el título de dominio adquirido mediante la venta judicial, advinieron en conocimiento que el terreno hipotecado había sido previamente expropiado por la Autoridad.

Los esposos Figueroa-Cruz alegaron entonces que se les había privado de su propiedad sin el debido proceso de ley, así como que el proceso judicial de expropiación forzosa era nulo por falta de parte indispensable. Adujeron que la A.C.T. tenía que verificar los gravámenes que pesaban so-

---

(2) El referido pagaré tenía fecha de vencimiento de 16 de enero de 2000.

(3) Caso *Orlando C. Figueroa Burgos v. Roberto Iñesta Nazario*, Civil Núm. KICD 2011–1205(902).

bre una propiedad justo antes de que se autorizara el retiro de los fondos consignados como justo valor. De haberse hecho eso, en este caso se hubiera evitado que el Sr. Roberto Iñesta Nazario retuviera la totalidad de la suma de dinero consignada en perjuicio del acreedor hipotecario. Asimismo, los esposos Figueroa-Cruz acusaron a su deudor, el señor Iñesta Nazario, de haber ocultado la existencia del gravamen hipotecario que se había presentado en el Registro de la Propiedad para la fecha en que éste solicitó el retiro de los fondos.

En la demanda de intervención, los esposos Figueroa-Cruz solicitaron que se citase al Sr. Roberto Iñesta Nazario para que mostrara causa por la cual había ocultado el gravamen hipotecario en el proceso de expropiación y por haber retenido para sí la suma total consignada por la A.C.T. En la alternativa, requirieron que la Autoridad satisficiera la deuda por alegadamente incumplir con el proceso de expropiación forzosa al no presentar una certificación registral de fecha reciente a la vista final. Amparó su contención en la Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, 32 L.P.R.A. sec. 2901 *et seq.* (Ley de Expropiación Forzosa), y la Regla 58.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

El Tribunal de Primera Instancia ordenó a la parte interventora que acreditara que su derecho surgía del Registro de la Propiedad a la fecha de presentación de la petición de expropiación forzosa. En cumplimiento de la orden, los interventores expusieron que a pesar de que la escritura de hipoteca se presentó en el Registro en fecha posterior a la presentación de la demanda de expropiación, la fecha que se debe considerar es la del "último retiro de fondos". Nuevamente, justificaron su derecho a intervenir en el pleito de expropiación forzosa en el alegado incumplimiento de la A.C.T. de no proveer una certificación registral reciente a la vista final del caso y antes que se autorizara el retiro de la cantidad adicional consignada como compensación justa.

Atendida la petición de intervención y demás escritos presentados, el foro primario la declaró "no ha lugar" bajo el fundamento de que los acreedores hipotecarios no estaban protegidos por el Registro de la Propiedad *al momento de presentarse la petición de expropiación forzosa*; es decir, el 14 de marzo de 2001.

Inconformes, los esposos Figueroa-Cruz acudieron mediante un recurso de *certiorari* al Tribunal de Apelaciones. El 28 de mayo de 2004, el tribunal *a quo* dictó sentencia en la que revocó al foro primario. Analizando únicamente la doctrina aplicable al derecho de intervención establecido en la Regla 21 de Procedimiento Civil, 32 L.P.R.A. Ap. III, el foro apelativo intermedio consideró que, aun cuando la intervención generalmente no se concede después de dictada la sentencia, en el presente caso era la manera más eficaz de proteger los intereses o derechos del interventor. Además, el foro apelativo intermedio concluyó que los esposos Figueroa-Cruz eran acreedores de un pagaré hipotecario a la fecha en que se celebró la vista para determinar la compensación a pagarse por la expropiación forzosa, por lo que la intervención "protegería los intereses que pudiesen ser afectados por el dictamen emitido por el tribunal en el pleito de expropiación forzosa".([4])

Inconforme con tal determinación, la Autoridad acudió ante nosotros, y en el recurso de *certiorari* presentado señaló como único error lo siguiente:

> Erró el Honorable Tribunal de Circuito de Apelaciones al permitir a destiempo la intervención de un acreedor hipotecario en un procedimiento de expropiación forzosa ordenando así la litigación de un derecho de crédito personal en la sala especializada de expropiaciones luego de dictada la sentencia.

Expedimos el presente recurso en reconsideración. Contamos con los alegatos de las partes menos del señor Iñesta

---

([4]) Véase Sentencia del Tribunal de Apelaciones, Región Judicial de San Juan, Panel II, Caso Núm. KLCE 0303604, de 28 de mayo de 2004, Apéndice del recurso de *certiorari*, págs. 218–228.

Nazario, quien no compareció ante nosotros. Estando en posición de resolver, procedemos a así hacerlo.

## II

El acreedor hipotecario alegó que, en virtud de la Regla 58.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, la Autoridad, como ente expropiante, estaba obligada a presentar en el tribunal de instancia, previo a la celebración de la vista para fijar la justa compensación, una certificación registral de fecha reciente a la vista. Ello, independientemente de la certificación que se incluyó en los legajos de expropiación al momento de presentarse la petición. El acreedor indicó que de haberse hecho eso en este caso, la Autoridad hubiera tenido que acumularle en este proceso y éste no se hubiera visto afectado.

La Autoridad, por su parte, arguyó que el Estado satisfizo su obligación según lo establecido en la Regla 58.3(b) de Procedimiento Civil, *supra*, cuando presentó, junto con la demanda, un certificación registral que había sido expedida tres meses antes de presentarse la demanda. Finalmente indicó que exigir una segunda certificación resultaría muy oneroso para el Estado y tendría como resultado "postergar el derecho que le asiste a la parte con interés a recibir la justa compensación prontamente".

Veamos entonces.

A. Recientemente, en *A.C.T. v. 780614m²*, 165 D.P.R. 121 (2005), nos expresamos sobre la naturaleza del procedimiento de expropiación forzosa y, en particular, sobre el derecho de un acreedor hipotecario a litigar frente al Estado el monto de la justa compensación. Allí resolvimos que el titular de un derecho de garantía real sobre un inmueble expropiado no tenía derecho a litigar la justa compensación, pero *sí tenía derecho a ser citado y oído para que pudiera reclamar del fondo de compensación la parte correspondiente a su acreencia.* Hoy nos corresponde determinar, a la luz de lo dispuesto en la Regla 58.3(b) de Pro-

cedimiento Civil, *supra*, cómo hacer efectivo ese derecho cuando el gravamen hipotecario sobre la finca no constaba en el Registro de la Propiedad al momento de iniciarse el procedimiento de expropiación, pero sí cuando se celebró la vista para dilucidar el justo valor, y por lo tanto, al momento de dictarse sentencia final.

El procedimiento judicial de expropiación forzosa es de naturaleza civil y se lleva a cabo conforme se dispone en la Ley de Expropiación Forzosa y en la Regla 58 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse: *A.C.T. v. 780614m²*, supra; *Adm. de Terrenos v. Nerashford Dev. Corp.*, 136 D.P.R. 801 (1994); *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991); *E.L.A. v. Registrador*, 111 D.P.R. 117 (1981); *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 D.P.R. 961 (1953); *McCormick v. Marrero, Juez*, 64 D.P.R. 260 (1944). Véase, también, J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. II, pág. 1074.

La Ley de Expropiación Forzosa dispone que, junto a la petición de expropiación presentada en el tribunal, el peticionario o demandante *podrá incluir* una declaración para la adquisición y entrega material de la propiedad objeto de expropiación firmada por la persona autorizada en ley para la expropiación correspondiente. En ésta se debe hacer constar que la propiedad se pretende adquirir para uso del Estado Libre Asociado de Puerto Rico o para alguna agencia o entidad gubernamental, así como también el uso público específico para el que se destinará. 32 L.P.R.A. sec. 2907. De ordinario, la petición de expropiación viene acompañada con un legajo de expropiación en el cual se incluye, entre otros documentos, la declaración de adquisición y entrega material, *por lo que en la práctica, la declaración de adquisición no se presenta en etapa posterior a la presentación de la petición ante el tribunal.* Presentada la declaración y depositada en el tribunal la compensación, la Ley de Expropiación Forzosa dispone que "el título absoluto de dominio de la propiedad ... quedará in-

vestido en el Estado Libre Asociado de Puerto Rico, ... o en la agencia o instrumentalidad ... que hubiere requerido la expropiación ...". 32 L.P.R.A. sec. 2907. Ello sin necesidad de ulterior procedimiento.

Este es un procedimiento de naturaleza *in rem*, por lo que se insta contra la propiedad. Por lo tanto, no cabe hablar de partes indispensables al procedimiento. *A.C.T. v. 780614m $^{2}$*, supra; *Adm. de Terrenos v. Nerashford Dev. Corp.*, supra; *E.L.A. v. Registrador*, supra; *Pueblo v. McCormick, Alcalde & Co.*, 78 D.P.R. 939, 945 (1956); *Pueblo v. 632 Metros Cuadrados de Terreno*, supra. Es por este motivo que no se puede desestimar un recurso de expropiación por ausencia de parte indispensable ni, mucho menos, privar de jurisdicción al tribunal para transferir el título al Estado. *E.L.A. v. Registrador*, supra; 12 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 3045, pág. 203 (1997) ("[S]ince the proceeding is in rem, there are no indispensable parties; the failure to join a party does not defeat the condemnor's title ...").

En lo que concierne a la acumulación de los demandados, la Ley de Expropiación Forzosa preceptúa que la demanda se insta en contra de los dueños de la propiedad, sus ocupantes y todas las demás personas con derecho o interés sobre la propiedad, *"hasta donde sea posible al demandante determinarlo"*. (Énfasis suplido.) 32 L.P.R.A. sec. 2905. Ello para fines del derecho que éstos puedan tener sobre la justa compensación o daños compensables. Íd.

La Regla 58.3 de Procedimiento Civil, *supra*, específicamente provee que al instituirse el pleito, "el demandante solamente tendrá que *acumular como demandados* aquellas personas que tengan o reclamen un derecho en la propiedad *cuyos nombres a la sazón se conozcan"*. (Énfasis suplido.) Por otro lado, la regla ordena también que *antes de cualquier vista para determinar la compensación* que ha de pagarse por la propiedad, el demandante acumulará como demandados a todas las personas que ten-

gan o reclamen un derecho en dicha propiedad, *cuyos nombres puedan ser conocidos mediante diligencia razonable en el Registro de la Propiedad.*([5])

■ Vemos entonces que la referida Regla 58.3(b) establece dos etapas en el proceso judicial de expropiación forzosa y le impone al Estado dos obligaciones distintas respecto a la acumulación de las partes demandadas en cada una de las etapas. La primera etapa es la de presentación de la petición, en la cual sólo se le requiere al Estado que acumule como demandados a aquellas personas que a la sazón se conozcan y, hasta donde sea posible conocerlos, que tengan algún interés en la propiedad. La regla no exige ningún grado de diligencia particular. En la segunda etapa, la Regla 58.3(b) le impone un *onus* mayor al Estado, pues éste está obligado —previo a que se celebre cualquier vista para determinar la compensación— a acumular en el pleito aquellas personas con interés sobre la propiedad cuyos nombres se adviertan luego de llevar a cabo *las diligencias razonables en el Registro de la Propiedad.*

■ En cada una de estas fases del procedimiento judicial se protegen o salvaguardan intereses distintos. Nos explicamos. Presentada la declaración de adquisición y consignado el importe del justo valor, "el gobierno es investido del título ... sobre la propiedad". *Pueblo v. 632 Metros Cuadrados de Terreno*, supra, pág. 971. Véase 32 L.P.R.A.

---

([5]) La Regla 58.3(b) de Procedimiento Civil establece cuál debe ser el contenido de la demanda de expropiación. Dicha disposición reglamentaria dispone, en lo pertinente:

"(b) *Contenido.*—La demanda contendrá una relación breve y sencilla de la autoridad bajo la cual se expropia, el uso para el cual la propiedad habrá de adquirirse, una descripción de la propiedad suficiente para identificarla, los derechos que han de adquirirse y en cuanto a cada propiedad una designación de los demandados que han sido acumulados como dueños de la misma o que tengan algún derecho en ella. *Al instituirse el pleito, el demandante solamente tendrá que acumular como demandados aquellas personas que tengan o reclamen un derecho en la propiedad cuyos nombres a la sazón se conozcan, pero antes de cualquier vista para determinar la compensación que ha de pagarse por cada propiedad, el demandante acumulará como demandados todas las personas que tengan o reclamen un derecho en dicha propiedad, cuyos nombres puedan ser conocidos mediante diligencia razonable en el registro de la propiedad,* ... y también aquellos cuyos nombres hayan sido conocidos de otro modo." (Énfasis suplido.)

sec. 2907. Es en este momento entonces, y no con la resolución del tribunal en que se ordena la investidura de título en el Estado, que el Gobierno adviene titular del bien expropiado. *Pueblo v. Registrador*, 70 D.P.R. 260 (1949). El interés del Estado en un procedimiento de expropiación es exclusivamente advenir titular del inmueble para proceder a ejecutar la obra pública programada. Véase *Wright and Miller*, supra, págs. 204–205. El hecho de que el Estado sólo tenga que acumular a aquellas personas que "a la sazón se conozcan", sin más, simplifica el proceso y evita dilaciones innecesarias en el desarrollo de la obra pública.

Por otro lado, los intereses de los dueños del inmueble expropiado y de las partes con interés sobre él quedan protegidos mediante la exigencia de la referida Regla 58.3(b), de que previa cualquier vista sobre el justo valor, se efectúen las diligencias necesarias en el Registro de la Propiedad para identificar a todas las partes que tengan un interés sobre el bien expropiado. Así, el Estado se cerciora de que quien no pudo ser identificado al inicio, pueda comparecer al pleito para dilucidar el interés que tuviera sobre el fondo de justa compensación. Estas personas, después de todo, tienen derecho a ser citados y oídos antes de dictarse la sentencia final. *A.C.T. v. 780614m²*, supra; *E.L.A. v. Registrador*, supra, pág. 120 esc. 10; *Pueblo v. Registrador*, 64 D.P.R. 130, 135 (1944).

Adviértase que el título que adquiere el Estado es nuevo, derivado de su poder de soberano, por lo cual todo derecho anterior que gravase el inmueble queda extinguido. *A.C.T. v. 780614m²*, supra. Y esos gravámenes entonces "se transfieren al fondo estimado para la justa compensación, el cual sustituye al inmueble en lo que respecta a las reclamaciones del dueño anterior y de los acreedores ... y dicha indemnización se extiende a la hipoteca". *E.L.A. v. Registrador*, supra, pág. 120; *A.C.T. v. 780614m²*, supra. Las partes con interés entonces recobran de ese fondo.

Cabe recordar que las partes con interés no

tienen un derecho de crédito frente al Estado y éste no está obligado a pagarle a cada una la porción que le corresponda del fondo de justa compensación. Así, en *Adm. de Terrenos v. Nerashford Dev. Corp.*, supra, pág. 808, indicamos que "no surge para cada persona un derecho de crédito frente al gobierno; sólo nace una obligación del gobierno de depositar a favor de éstas una compensación justa por la finca". Ahora bien, tal y como allí indicamos, si el Estado incumple con su obligación de hacer un esfuerzo razonable por incluir en el pleito a todas las partes con interés sobre el bien expropiado, surge entonces una obligación de éste hacia la parte no incluida, pero dicha "obligación es subsidiaria a la que tiene el resto de las partes compensadas hacia la parte olvidada". Íd., pág. 811 esc. 6.[6] Véanse, además: *Pueblo v. McCormick, Alcaide & Co.*, supra, pág. 947; Cuevas Segarra, *op. cit.*, pág. 1079.

■ Finalmente, la expropiación forzosa constituye la transmisión de un derecho expropiado en forma imperativa, por lo que da base a un acto registrable cuando recae sobre un inmueble o un derecho real. R.M. Roca Sastre, *Derecho Hipotecario*, 8va ed., Barcelona, Ed. Bosch, 1997, T. V, págs. 278–279. El título que se adquiere, como vimos, es declarativo de dominio, y mediante este proceso se extinguen todas las cargas y los derechos constituidos con anterioridad al inicio del procedimiento de expropiación. Íd. Véase, también, *A.C.T. v. 780614m²*, supra. Igualmente se "extinguirá[n] las cargas constituidas durante la tramitación del expediente expropiatorio, o sea, en el período de tiempo comprendido entre su inicio y la ocupación de la cosa o bien por el expropiante". F. Pera Verdaguer, *Expropiación Forzosa*, 2da ed., Barcelona, Ed. Bosch, 1970, pág. 72. Ciertamente, así tiene que ser, pues de lo contrario, y de quedar gravado el bien expropiado y así inscribirse, se

---

[6] Dejar de incluir alguna parte con interés no afecta la jurisdicción del tribunal en cuanto a la transferencia del título de dominio al estado; sin embargo, ello podría conllevar que los no citados pudieran relitigar la compensación. *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 D.P.R. 961, 971 esc. 6 (1953).

perjudicaría y se frustraría el propósito de la expropiación, porque los dueños de esos gravámenes podrían dirigirse contra la propiedad para hacerlos efectivos, perjudicando la obra pública para la cual se expropió el bien.

Resumiendo, por ser el procedimiento de expropiación forzosa de naturaleza *in rem*, no cabe hablar de partes indispensables en él. Sin embargo, el Estado tiene la obligación de acumular en el pleito toda aquella parte con interés que pueda ser identificada —mediante diligencia razonable en el Registro de la Propiedad— antes de celebrarse la vista sobre el justo valor, para que allí se diluciden los intereses de cada cual sobre el fondo de compensación. Incumplir con este deber no hace ineficaz el traspaso del título de dominio absoluto del expropiante, pero la parte no incluida podría tener derecho a ser compensada.[7] Investido el Estado con el título de dominio sobre el bien expropiado, se extinguen las cargas y los derechos constituidos antes de iniciado el procedimiento, así como también las constituidas durante el procedimiento judicial.

Trazado el marco doctrinal, apliquémoslo a los hechos del caso de epígrafe.

### III

En el caso de epígrafe, la A.C.T. anejó a su petición de expropiación una certificación registral de 23 de mayo de 2000, pero actualizada al 13 de diciembre del mismo año (tres meses antes de la presentación de la petición), y acumuló como parte demandada a todas aquellas personas que pudieran tener interés en la propiedad según surgía de

---

[7] Véanse: *U.S. v. 194.08 Acres of Land,* 135 F.3d 1025 (5to Cir. 1998); *United States v. 125.2 Acres of Land,* 732 F.2d 239 (1er Cir. 1984); *Fulcher v. United States,* 632 F.2d 278 (4to Cir. 1980); *United States v. Certain Parcels of Land,* 40 F.Supp. 436, 444 (Md. 1941) ("It seems logically to follow that interests of unnamed and unknown parties are not concluded by the proceedings, and they must be entitled to just compensation in some way, even though the government has taken title and possession to the land and the fund has been fully distributed by the court").

la certificación registral. La Autoridad adujo que ello era suficiente notificación para cumplir con lo dispuesto en la Regla 58.3(b) de Procedimiento Civil, *supra*. Por el contrario, los interventores, esposos Figueroa-Cruz, aducen que era necesaria una segunda certificación registral que incluyera las constancias del Registro de la Propiedad para la finca en controversia en momentos recientes a la vista final sobre justa compensación.

La certificación registral es el método por excelencia para hacer constar el contenido del Registro de la Propiedad. La certificación es un documento público "que [hace] fe [de] sí mism[o]". Art. 27 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2105. Este es un mecanismo para dar publicidad formal de las constancias del Registro de la Propiedad. Constituye, por lo tanto, prueba *prima facie* de los hechos allí consignados. *Pueblo v. Ocean Park Development*, 73 D.P.R. 360 (1952); L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 2da ed., San Juan, Jurídica Editores, 2000, págs. 78–81.[8] Véanse, además: E. Serrano Alonso, *Conceptos Fundamentales del Derecho Hipotecario*, 4ta ed., Madrid, Edisofer, S.I., 2002; P. Ávila Navarro, *Curso práctico sobre Registro de la Propiedad*, Barcelona, Ed. Bosch, 1999.

Cuando la parte no incluida en el pleito es un acreedor hipotecario cuya hipoteca está propiamente inscrita,[9] el Estado no puede alegar como defensa error o inadvertencia, dado que un somero examen de los libros en

---

[8] Aunque nuestro Registro de la Propiedad no siempre concuerda con la realidad extrarregistral —por ser de inscripción voluntaria— goza de una presunción *iuris tantum* de corrección y exactitud (principio de legitimación). E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, San Juan, Butterworth, 1992, T. XV (Derecho Inmobiliario Registral II), págs. 35–36; L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 2da 3ed., San Juan, Jurídica Editores, 2000, pág. 183 *et seq.*

[9] A pesar de la naturaleza voluntaria de la inscripción en el Registro de la Propiedad, la hipoteca es un derecho real de inscripción constitutiva. Es decir, para que quede válidamente constituida, es necesaria su inscripción en el Registro de la Propiedad. Art. 1774 del Código Civil, 31 L.P.R.A. sec. 5042; Art. 188 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2607; Rivera Rivera, *op. cit.*, pág. 483, y casos allí citados.

el Registro de la Propiedad le puede relevar su interés. En este caso, sin embargo, la hipoteca no estaba constituida cuando se presentó la petición de expropiación y la investidura del título en el Estado.

En este caso la Autoridad se tomó la iniciativa de incluir desde el comienzo del proceso de expropiación a todas las partes con interés en el inmueble, según se reflejaba de la certificación registral procurada, y que acompañó con la petición de expropiación. El tribunal de instancia, por su parte, a los pocos días de presentada la petición, señaló la vista sobre justa compensación. Ésta no pudo celebrarse debido a la incomparecencia del señor Iñesta y su abogado, por lo que el tribunal la reprogramó para septiembre. Del expediente del tribunal de instancia se deduce que las partes comenzaron un proceso de negociación para transar el reclamo de justa compensación. Así, llegado septiembre, se le informó al tribunal que las partes habían convenido en el justo valor, y el 9 de octubre de 2001 se presentó la estipulación acordada.

*A la luz de la cadena de eventos antes transcritos resolvemos que, en este caso, no era necesario que la Autoridad actualizara nuevamente, en octubre de 2001, la certificación registral sometida con la petición de expropiación.* Adviértase que la vista de justa compensación en este caso se señaló apenas unos días después de presentarse la petición, desencadenando así una serie de actuaciones que concluyeron con la estipulación acordada sobre la justa compensación. No es razonable en este caso exigir que el Estado actualice la certificación registral nuevamente cuando la citada Regla 58.3(b) de Procedimiento Civil dispone que ésta se presentará *"antes de cualquier* vista para determinar la compensación". En este caso, justo antes de señalarse la vista inicial sobre la compensación, ya se había presentado una certificación registral de fecha reciente. Concluimos, por lo tanto, que no era necesaria la presentación de una nueva certificación o su actualización, como nos invita el recurrido. En consecuencia, se revoca la determinación del Tribunal de Apelaciones.

Finalmente, debemos expresar que el recurrido, aun cuando ya no cuenta con una garantía real, ya que ésta quedó extinguida con la expropiación, no así su acreencia. Éste tiene disponible los mecanismos legales correspondientes para reclamar de su deudor el monto total de la deuda y cualquier daño, si alguno, que hubiese sufrido.

Por los fundamentos expresados, *se revoca la sentencia dictada por el Tribunal de Apelaciones y se desestima la demanda de intervención instada.*

*Se dictara sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López disintió sin opinión escrita. La Jueza Asociada Señora Fiol Matta no intervino.