Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE BAYAMÓN<br><br>Apelada<br><br>v.<br><br>MARÍA MANZANARES VIUDA DE MATEO Y OTROS<br><br>Apelante | KLAN202401161 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Sobre:<br>Expropiación Forzosa<br><br>Caso Núm.<br>BY2022CV03532 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 24 de marzo de 2025.

Comparece ante nos la parte apelante, Mylka Colón, en representación de la Sucesión Colón (en adelante, parte apelante o Sucesión Colón), y solicita que se deje sin efecto la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala de Bayamón, el 24 de octubre de 2024. Mediante la misma, el foro *a quo* autorizó la expropiación forzosa, quedando investido el título de dominio a favor del Municipio Autónomo de Bayamón (en adelante, parte apelada o Municipio), y concedió como justa compensación, la suma de seis mil ochocientos ochenta dólares con ochenta y cuatro centavos ($6,880.84).

Por los fundamentos que expondremos a continuación, se *revoca* la sentencia apelada.

### I

El 12 de julio de 2022 el Municipio Autónomo de Bayamón presentó una petición de expropiación forzosa contra María Manzanares viuda de Mateo, y el Centro de Recaudación de Ingresos Municipales (en adelante, CRIM), con relación a un inmueble

ubicado en la calle Manuel Rossy #22, en Bayamón. En la petición se especificó que era necesaria la adquisición del pleno dominio del inmueble en cuestión para llevar a cabo los fines del proyecto intitulado "Rehabilitación de Centro Urbano de Bayamón".[1] Según la descripción provista en el *Exhibit "A"*, la propiedad no constaba inscrita en el Registro de la Propiedad, y se le otorgó un valor de treinta y cinco mil dólares ($35,000.00).[2] Se estimó el pago por concepto de justa compensación en seis mil ochocientos ochenta dólares con ochenta y cuatro centavos ($6,880.84), luego de haber descontado veintiocho mil ciento diecinueve dólares con dieciséis centavos ($28,119.16), por concepto de la deuda relacionada al CRIM.[3]

Más adelante, el 29 de agosto de 2022, el Municipio enmendó la demanda para informar que la señora María Manzanares había fallecido.[4] Igualmente, se incluyó en la petición a John Doe y Richard Doe, como posibles miembros de la Sucesión de la fallecida. Ese mismo día, la parte apelada presentó una *Moción Solicitando Emplazamiento por Edicto*, en la cual anejó una declaración jurada suscrita por el investigador privado, Ramón L. Cruz Semprit.[5] En la misma, el referido investigador indicó que acudió a la propiedad sujeta a expropiación, para notificar a las partes con interés o indagar sobre su paradero actual.[6] Allí, tuvo la oportunidad de entrevistar a tres (3) vecinos inmediatos. De las entrevistas realizadas, surgió que la propiedad había estado desocupada por los pasados diez (10) años, y que quien último residió en ella fue el señor Roberto Colón Rosa, quien había fallecido.

---

[1] Apéndice del recurso, pág. 1.
[2] *Íd.*, pág. 7.
[3] *Íd.*
[4] *Íd.*, pág. 13
[5] SUMAC, Entrada Núm. 10.
[6] Apéndice del recurso, pág. 44.

Luego de distintos trámites que no son pertinentes a la controversia ante nos, el 23 de noviembre de 2022, mediante una *Moción Urgente*, compareció, por derecho propio, Mylka Colón Nieves.[7] En la misma, la parte apelante alegó que el inmueble sujeto a expropiación forzosa le pertenecía a su familia desde hacía más de veinticinco (25) años, y no a la señora María Manzanares. Además, solicitó al Foro Primario que le permitiera tener acceso al expediente del caso y a que se le concediera un tiempo razonable para conseguir representación legal. Asimismo, el 29 de mayo de 2023, la parte apelante presentó una *Moción Solicitud de Orden*, mediante la cual le solicitó al Tribunal que ordenara al CRIM darle copia certificada del expediente del inmueble para conocer la razón por la cual la propiedad en cuestión se encontraba a nombre de la señora Manzanares, en vez de a nombre de su familia.[8]

Posteriormente, el 2 de junio de 2023, la parte apelante presentó su oposición a la petición de expropiación forzosa.[9] En la misma, la parte apelante solicitó que se sustituyera en el epígrafe del caso a John Doe por Mylka Colón Nieves y su hermano Roberto Colón Nieves, como únicos herederos de la familia Colón. De igual forma, la parte apelante arguyó que la petición en cuestión no se realizó conforme a derecho. En específico, se cuestionó que la petición de expropiación no cumplía con el Artículo 2.018 (a) (4) de la Ley Núm. 107 de 2020, 21 LPRA sec. 7183, ya que no se especificó el fin público al que sería destinado el inmueble, más allá de indicar que era parte del proyecto de "Rehabilitación de Centro Urbano de Bayamón".[10] Incluso, la parte apelante alegó que, dentro de las calles afectadas por el aludido proyecto, no se encontraba la del inmueble en cuestión. Por igual, planteó que el Instituto de Cultura

---

[7] *Íd.*, pág. 25.
[8] *Íd.*, pág. 26.
[9] *Íd.*, pág. 29.
[10] *Íd.*, pág. 31.

Puertorriqueña había reconocido que la propiedad en cuestión tenía un valor histórico, y que esta debía ser rehabilitada para conservar sus características distintivas.[11]

Por otro lado, también arguyó que la cantidad que el Municipio propuso como justa compensación era errónea porque, a su entender, estaba minusvalorada.[12] Por ello, solicitó que se permitiera efectuar una nueva tasación a los efectos de demostrar el valor correcto del inmueble.[13] Igualmente, cuestionó la valoración de la deuda contributiva relacionada al CRIM.[14] Por otra parte, la Sucesión Colón expresó que tenía la intención de rehabilitar el inmueble, e informó que desde el año 2019 había invertido aproximadamente cinco mil dólares ($5,000.00) en reparaciones a la misma.[15]

El 6 de junio de 2023 el Tribunal de Primera Instancia ordenó al CRIM a que entregara copia certificada del expediente a la parte apelante.[16] En adición, el Foro Primario le concedió veinte (20) días a la parte apelada para presentar una réplica a la *Moción Oposición a Expropiación.*[17]

El 20 de junio de 2023 la parte apelada presentó *Moción en Cumplimiento de Orden,* en la cual solicitó que se le ordenara a la parte apelante presentar prueba de que era parte con interés en el caso, y que se pospusiera su comparecencia hasta que se celebrara una vista a tal fin.[18] La parte apelada informó al Tribunal de Primera Instancia que demandó a la señora María Manzanares por la información que surgía del inmueble, según la certificación de

---

[11] *Íd.*, pág. 32.
[12] *Íd.*
[13] *Íd.*, pág. 33.
[14] *Íd.*
[15] *Íd.*, pág. 31.
[16] *Íd.*, pág. 38.
[17] SUMAC, Entrada Núm. 43.
[18] Apéndice del recurso, pág. 39.

deuda contributiva. Además, el Municipio peticionó al Foro Primario que firmara la Resolución de Entrega Material de la Propiedad.

El 26 de junio de 2023, la parte apelante presentó una *Réplica y Solicitud de Orden*, en la cual se opuso a lo solicitado por el Municipio.[19] En la misma, aludió a la declaración jurada presentada por la parte apelada, en la cual se reconoce que el último residente de la propiedad lo fue el señor Roberto Colón, padre de la parte apelante. Además, la Sucesión Colón alegó que el CRIM incumplió con la orden del Tribunal de entregarle el expediente del inmueble. La parte apelante le solicitó al Tribunal que, de no poder producir el expediente del CRIM, se sustituyera a la señora Manzanares por Mylka Colón, como parte con interés.

Así las cosas, el 15 de agosto de 2023 el CRIM presentó *Moción en Cumplimiento de Orden*, en la cual informó que se veían imposibilitados de cumplir con la entrega del expediente de la propiedad en cuestión, ya que no se logró dar con el paradero de este.[20] Además, indicó que no surgía en su sistema contributivo, información sobre la escritura que dio paso a que se registrara el inmueble a nombre de la señora María Manzanares.

Posteriormente, el 22 de diciembre de 2023 la representación legal de la parte apelante presentó una *Moción Informativa,* mediante la cual indicó que, a pesar de que no logró comunicarse con su clienta, había contactado a su hermano, Roberto Colón Nieves, quien estaría disponible para formar parte del caso como miembro de la Sucesión Roberto Colón Rosa.[21] Más adelante, el 25 de enero de 2024 el Tribunal ordenó que se enmendara el epígrafe del caso para incluir como parte con interés a Mylka Colón Nieves.[22]

---

[19] *Íd.*, pág. 41.
[20] *Íd.*, pág. 46.
[21] *Íd.*, pág. 50.
[22] SUMAC, Entrada Núm. 79.

Mediante la *Moción en Cumplimiento de Orden*, presentada el 12 de febrero de 2024, la parte apelante informó al Tribunal de Primera Instancia las gestiones que se estaban realizando para obtener, tanto la declaratoria de herederos, así como las declaraciones juradas solicitadas.[23] Junto a la misma, se anejó una declaración jurada suscrita por Marisol Aponte Burgos, de la cual surge que esta era propietaria de un negocio vecino de la propiedad y que solo había conocido al señor Roberto Colón Rosa como el dueño de la misma.[24]

Posteriormente, en cumplimiento con órdenes previas para que se le reconociese el derecho sobre el inmueble, el 4 de marzo de 2024, la parte apelante presentó una *Moción Informativa y en Cumplimiento de Orden.* En el pliego, anejó la *Resolución* de la Declaratoria de Herederos, en la cual se reconocen como únicos y universales herederos del fallecido Roberto Enrique Colón Rosa, a sus dos (2) hijos, Mylka Rebecca Colón Nieves y Roberto Enrique Colón Nieves.[25] Así, la parte apelante solicitó al Tribunal que, tomando en consideración los documentos previamente presentados, se reconociera a la Sucesión Colón como herederos de la propiedad en cuestión.

Examinadas las previas mociones presentadas por la parte apelante, el 7 de marzo de 2024, el Foro Primario ordenó al Municipio a que enmendara la petición de expropiación del caso de autos para incluir como parte con interés a la Sucesión Colón.[26] Según ordenado, el 12 de marzo de 2024, el Municipio presentó una *Moción en Cumplimiento de Orden* para enmendar el *Exhibit "A"* de la petición de expropiación.[27] A esos efectos, el 26 de marzo de 2024,

---

[23] Apéndice del recurso, pág. 52.
[24] *Íd.*, pág. 54.
[25] *Íd.*, págs. 55-57.
[26] SUMAC, Entrada Núm. 85.
[27] Apéndice del recurso, pág. 59.

el Tribunal de Primera Instancia notificó una *Resolución* autorizando la referida enmienda.[28]

Así las cosas, el 21 de junio de 2024, el Tribunal de Primera Instancia emitió una *Resolución,* en la cual, entre otras, le otorgó a la parte apelante un término de "60 días para presentar su posición de valor mediante un informe de valoración".[29] Además, en la aludida determinación, se pautó la vista de justa compensación para el 9 de octubre de 2024.

El 2 de julio de 2024 la parte apelante presentó una *Reconsideración* para reclamar que se excluyera a la señora María Manzanares como parte con interés en el pleito.[30] Enfatizó que no había constancia de que la señora Manzanares tuviera un reclamo válido en la aludida propiedad. Añadió que el CRIM no pudo justificar el por qué aparecía esta persona como titular del inmueble, ya que no tenía el expediente relacionado con la propiedad. Además, argumentó que "consignarle un dinero a Manzanares sería en detrimento de una parte con verdadero interés, la [S]ucesión Colón Rosa".[31]

Posteriormente, el 8 de agosto de 2024, la parte apelante presentó *Moción en Solicitud de Orden,* mediante la cual reiteró su petición de que, debido a la falta de justificación del CRIM, se excluyera a la señora Manzanares como parte con interés en el pleito, pues su permanencia tenía el efecto de diluir la justa compensación que en su día se le concedería al titular del inmueble en cuestión.[32] Igualmente, insistió en que la única parte con interés era la Sucesión Colón.

Así las cosas, el 26 de agosto de 2024, la parte apelante informó que, a pesar de las gestiones realizadas para cumplir con la

---

[28] SUMAC, Entrada Núm. 87.
[29] Apéndice del recurso, pág 70.
[30] *Íd.*, pág. 73.
[31] *Íd.*, pág. 74.
[32] *Íd.*, pág. 81.

orden del 21 de junio de 2024, no había conseguido un tasador que le hiciera el informe de valoración.[33] Por ende, la parte apelante solicitó un término adicional de treinta (30) días para cumplir con la orden. Sin embargo, el 29 de agosto de 2024, el Foro Primario le concedió solo quince (15) días para la presentación del aludido informe, manteniendo la vista de justa compensación pautada para el 9 de octubre de 2024.[34]

El 6 de septiembre de 2024 el Tribunal de Primera Instancia declaró *No Ha Lugar* la *Reconsideración* que había sido presentada el 2 de julio de 2024 por la parte apelante, conservando a la señora Manzanares como parte con interés en el pleito.[35]

El 9 de octubre de 2024 el Foro Primario celebró la vista de justa compensación. Según la *Minuta* de los procedimientos, ni la parte apelante, ni su representación legal, comparecieron a la misma.[36] En la referida vista, el Municipio solicitó que se dictara sentencia conforme a las alegaciones, ya que la parte apelante no había presentado el informe de valoración, según ordenado el 21 de junio de 2024. Posteriormente, el 15 de octubre de 2024, la parte apelante compareció mediante *Moción Informativa, Otras,* en la cual solicitó disculpas y explicó las razones por su ausencia a la vista de justa compensación.[37]

Mediante *Resolución,* notificada el 16 de octubre de 2024, el Foro Primario autorizó la expropiación de la propiedad en cuestión, quedando investido el título de dominio en el Municipio Autónomo de Bayamón.[38] Por ello, ordenó al Registro de la Propiedad a que inscribiera el inmueble a favor de este. Ese mismo día, la parte apelante presentó una *Urgente Solicitud de Vista,* en la cual solicitó

---

[33] *Íd.*, pág. 86.
[34] *Íd.*, pág. 87.
[35] *Íd.*, pág. 108.
[36] *Íd.*, pág. 109.
[37] *Íd.*, pág. 111.
[38] *Íd.*, pág. 115.

que se señalara una nueva vista de justa compensación y que se dejara sin efecto la referida *Resolución*.[39] No obstante, dicha petición fue declarada *No Ha Lugar* por el Tribunal de Primera Instancia el 18 de octubre de 2024.[40]

El 24 de octubre de 2024, el Foro Primario emitió y notificó una *Sentencia*, en la cual declaró que el título de dominio de la propiedad "queda[ba] investido a favor del Municipio Autónomo de Bayamón".[41] Además, decretó que la justa compensación a pagarse por la propiedad sería de seis mil ochocientos ochenta dólares con ochenta y cuatro centavos ($6,880.84).

Inconforme, el 25 de octubre de 2025, la parte apelante presentó una *Reconsideración a Resolución y Sentencia*, en la cual, además de reiterar sus argumentos presentados en el transcurso del procedimiento, arguyó que también existía un error en la determinación de la justa compensación.[42] La parte apelante planteó que solo existían dos (2) posibles escenarios para calcular la misma. En el primer escenario propuesto, el CRIM solo podría cobrar cinco (5) años de deuda contributiva, según lo dispuesto por el Artículo 7.014 de la Ley Núm. 107 de 2020, 21 LPRA sec. 7963. En el segundo escenario expuesto, solo se podrían cobrar los impuestos a partir del año 2010, según lo dispuesto en el Artículo 7.050 de la referida Ley Núm. 107, *supra*, 21 LPRA sec. 8007.

Del mismo modo, el 31 de octubre de 2024, la parte apelante presentó una *Reconsideración a Solicitud de Orden Sobre Vista* sobre la determinación emitida el 18 de octubre de 2024, mediante la cual el Tribunal de Primera Instancia denegó la petición de la celebración de una nueva vista.[43] Sin embargo, al día siguiente, el Foro Primario

---

[39] *Íd.,* pág. 113.
[40] *Íd.*, pág. 119.
[41] *Íd.*, pág. 120.
[42] *Íd.*, pág. 121.
[43] *Íd.*, pág. 126.

la declaró *No Ha Lugar*.[44] De igual forma, el 14 de noviembre de 2024, el Tribunal de Primera Instancia emitió una *Resolución*, declarando *No Ha Lugar* la *Reconsideración a Resolución y Sentencia* presentada por la parte apelante.[45]

Aún en desacuerdo con lo resuelto, el 26 de diciembre de 2024, Mylka Colón, en representación de la Sucesión Colón compareció ante nos mediante el presente recurso de apelación. En el mismo expone los siguientes señalamientos:

> Erró el TPI al emitir la resolución de investidura a favor del Municipio cuando el ayuntamiento no cumplió con la ley al no contar con una resolución de la legislatura municipal que estableciera el fin público, porque contrario lo dicta la ley no fue incluido el Instituto de Cultura Puertorriqueña y porque los documentos sometidos por el CRIM tenían información incorrecta como el tamaño de la propiedad, y porque mantuvo como parte del pleito a una persona de nombre María Manzanares a pesar del reiterado incumplimiento del CRIM en acreditar como surge su contención de que ella es parte del pleito.
>
> Erró el TPI al determinar que la justa compensación era de $6,888 [sic] al ignorar que las contribuciones debieron calcularse desde 2010 o incluso un periodo menor de tiempo, y no como lo estaba haciendo el CRIM, desde el 1998.
>
> Erró el TPI al no permitir la celebración de una nueva vista para dar oportunidad de ser oída a la parte con interés.

El 27 de enero de 2025 el Municipio de Bayamón presentó su oposición al recurso de apelación. Entre los argumentos que presenta en su alegato, estos arguyen que la expropiación se realizó conforme a derecho. También planteó que la parte apelante tenía el peso de la prueba para probar que el valor era uno distinto al consignado, sin embargo, perdió su oportunidad al no comparecer a la vista de justa compensación.

---

[44] *Íd.*, pág. 133.
[45] *Íd.*, pág. 134.

Luego de examinar el expediente de autos, y con el beneficio de la comparecencia de las partes, procedemos a expresarnos.

## II

La expropiación forzosa constituye el poder soberano que reside en el Estado para adquirir el dominio de una propiedad sita dentro de sus límites territoriales. *Adm. Terrenos v. Corp. Pesquera Henares*, 201 DPR 14, 21 (2018). De este modo, el Estado está legitimado para hacerse de un bien privado y destinarlo a fines públicos, ello como resultado de su poder inherente para establecer restricciones sobre la propiedad. *Mun. de Guaynabo v. Adquisición M²*, 180 DPR 206, 216 (2010); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 425 (2008); *E.L.A. v. Registrador*, 111 DPR 117, 119 (1981). De ahí que la facultad de expropiación forzosa ha sido reconocida como una de superior jerarquía, posicionándose sobre los derechos propietarios de los ciudadanos. *Adm. Terrenos v. Corp. Pesquera Henares*, supra, pág. 21; *A.C.T. v. 780.6141m²*, 165 DPR 121, 130 (2005); *E.L.A. v. Registrador*, supra, pág. 119. En atención a ello, el legislador insertó en nuestro estado de derecho la Ley General de Expropiación Forzosa, Ley de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.*, precepto que define los procesos inherentes al ejercicio de la facultad en cuestión.

Ahora bien, el mecanismo de expropiación forzosa tiene límites constitucionales que protegen contra actuaciones abusivas o arbitrarias del Estado. *Adm. Terrenos v. Corp. Pesquera Henares*, supra, pág. 21; *Mun. de Guaynabo v. Adquisición M²*, supra, pág. 229. Con relación a ello, la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, sec. 9, Const. ELA, 1 LPRA, Tomo 1*; López y otros v. A.E.E.*, 151 DPR 701, 706 (2000). Como resultado, las únicas limitaciones

que pueden reconocerse a esta facultad estatal, son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compensación por ella. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* supra, pág. 425; *M. Mercado e Hijos v. Tribl. Superior*, 85 DPR 370, 375-376 (1962).

Con respecto a la acumulación de partes en una petición sobre expropiación forzosa, la Ley General de Expropiación Forzosa, *supra,* expresamente "preceptúa que la demanda se insta en contra de los dueños de la propiedad, sus ocupantes y todas las demás personas con derecho o interés sobre la propiedad". *A.C.T. v. Iñesta,* 165 DPR 891, 903 (2005). Específicamente, en su Sección 5, provee como sigue:

> Todas las personas que ocuparen cualquiera de las propiedades descritas en la demanda, que tuvieren o pretendieren tener cualquier interés en la misma o en los daños y perjuicios ocasionados por la expropiación, aunque no se les mencionare en ella, podrán comparecer y alegar su derecho, cada una por lo que respecta al dominio o interés que en la propiedad tuviere o reclamare, de igual modo que si su nombre figurase en la demanda.

32 LPRA sec. 2906.

De manera análoga, la Regla 58.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 58.3(b), por igual reconoce que, la parte demandante en una petición de expropiación forzosa, al momento de presentar el pleito correspondiente, "solamente tendrá que acumular como partes demandadas aquellas personas que tengan o reclamen un derecho en la propiedad cuyos nombres a la sazón se conozcan [...]". Así, previo a la celebración de cualquier vista para determinar la compensación a pagarse por la misma, la parte demandante:

> [...] tendrá que acumular como partes demandadas a todas las personas que tengan o reclamen un derecho [en la propiedad a expropiarse], incluyendo los(las) dueños(as), ocupantes, arrendatarios(as), usufructuarios(as), y acreedores(as) hipotecarios(as),

cuyos nombres puedan ser conocidos mediante diligencia razonable en el Registro de la Propiedad o cuyo interés pueda identificarse mediante visitas a la propiedad o de algún otro modo [...].

32 LPRA Ap. V, R. 58.3.

La parte con interés tendrá la oportunidad de presentar una contestación ante el Tribunal de Primera Instancia con sus defensas, e impugnar, tanto el fin público al cual será destinado el bien expropiado, como la cuantía establecida como justa compensación. *Mun. de Guaynabo v. Adquisición M²,* supra, pág. 218. "Sin embargo, el no haber llevado a cabo tales acciones no será impedimento para que presente prueba sobre la cuantía de la compensación que deba pagarse por su propiedad en la vista celebrada a tales efectos, ni evitará que participe en la distribución de la suma adjudicada". *ELA v. El Ojo de Agua Development*, 205 DPR 502, 520 (2020).

Cónsono con lo anterior, la Regla 58.5 de Procedimiento Civil, supra, establece que la parte demandada tiene derecho a participar de la vista sobre el justo valor de la propiedad, independientemente de que esta haya o no notificado su comparecencia en el proceso. Específicamente, la referida Regla expresa en lo pertinente:

[...]

[E]n la vista de la cuestión de justa compensación haya o no comparecido o contestado con anterioridad a dicha vista, podrá dicha parte demandada ofrecer evidencia en cuanto a la cuantía de la compensación que deba pagarse por su propiedad, y podrá participar en la distribución de la suma adjudicada.

32 LPRA Ap. III R. 58.5

**III**

En el presente caso, la parte apelante sostiene que el Tribunal de Primera Instancia erró al emitir la *Resolución de Investidura* a favor del Municipio Autónomo de Bayamón. Argumentó que no cumplió con la ley al no contar con una resolución de la legislatura

municipal que estableciera un fin público y al omitir la inclusión del Instituto de Cultura Puertorriqueña en el pleito. Además, la parte apelante alega que el foro sentenciador incurrió en error al determinar la cuantía de seis mil ochocientos ochenta dólares con ochenta y cuatro centavos ($6,880.84) como justa compensación. Por último, plantea que el Tribunal de Primera Instancia erró al denegar la celebración de una nueva vista de justa compensación, mediante la cual se le hubiese dado la oportunidad a la Sucesión Colón de ser oída. Atenderemos este último error, ya que, mediante nuestra adjudicación, disponemos del recurso ante nuestra consideración.

Según reseñamos previamente, nuestro ordenamiento jurídico ha reconocido que, en procedimientos de expropiación forzosa, la parte con interés tiene derecho a participar en la vista sobre la justa compensación, y presentar prueba para impugnar la cuantía sugerida por el promovente. Es más, se permite que una persona pueda participar en la referida vista sin haber comparecido ante el Tribunal de Primera Instancia.

Surge del expediente, que, en el presente caso, la parte apelante compareció ante el Tribunal de Primera Instancia, sin haber sido emplazada, y ha demostrado su interés en la propiedad en cuestión. Dicho interés fue reconocido por el Tribunal de Primera Instancia al ordenar que se enmendara la petición de expropiación para incluir a la parte apelante en el procedimiento. En varias ocasiones, la Sucesión Colón ha cuestionado la justa compensación que se pretendía otorgar por la propiedad, aludiendo al valor del inmueble. Para demostrar la minusvaloración, la parte apelante le solicitó al Foro Primario que se le permitiese presentar un informe de valoración, petición que fue declarada *Ha Lugar.* Asimismo, la Sucesión Colón ha planteado que el Municipio no ha demostrado el fin público requerido para expropiar la propiedad. Incluso, ha

insistido en que tiene la intención de rehabilitar la misma. Sin embargo, por no haber comparecido a la vista celebrada el 9 de octubre de 2024, las alegaciones antes mencionadas fueron eliminadas.

Resulta incongruente que a una parte que ha mostrado un interés constante en la propiedad objeto de expropiación, se le prive de participar en el proceso de expropiación. Ello, cuando nuestro ordenamiento jurídico contempla la posibilidad de que, personas que no han estado presentes durante un procedimiento de expropiación forzosa, puedan participar de la vista sobre la justa compensación. Su exclusión en la aludida vista resulta aún más inquietante cuando se trata de una audiencia en la cual se dirime la compensación que se le otorgará a una parte que ya fue decretada, por el Foro Primario, como parte con interés en la propiedad expropiada. Enfatizamos que la parte apelante se ha mantenido firme en sus argumentos, y ha insistido en que existe un error en la cuantía que se pretendía descontar del valor de la propiedad. En específico, ha cuestionado la suma de la deuda del CRIM atribuida al inmueble, la cual se encuentra a nombre de una persona y se desconoce de dónde emana, ya que el expediente sobre la misma en el CRIM no aparece.

Por ende, a raíz de lo antes expuesto, revocamos la determinación del Tribunal de Primera Instancia, dejando sin efecto la misma. Se ordena que se remita el caso al Foro Primario para la celebración de una nueva vista de justa compensación, en la cual se le dé la oportunidad a la parte apelante de presentar prueba que sustente, tanto que la propiedad tasa más del valor que se le otorgó por el Municipio, como del error en la deuda imputada.

**IV**

Por los fundamentos que anteceden, se *revoca* la *Sentencia* apelada y se devuelve el caso al Tribunal de Primera Instancia para la celebración de una nueva vista de justa compensación.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones