ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrido, *v.* SOCIEDAD CIVIL AGRÍCOLA E INDUSTRIAL SUCESIÓN J. SERRALLÉS Y OTROS, demandados y recurrentes.

*Número:* R-72-76          *Resuelto:* 12 de noviembre de 1975

*Orlando J. Antonsanti,* abogado de los demandados-recurrentes Sociedad Civil Agrícola e Industrial Sucesión J. Serrallés y otros; *Gilberto Gierbolini* y *Miriam Naveira de Rodón, Procuradores Generales, J. F. Rodríguez Rivera,* y *Peter Ortiz, Procuradores Generales Interinos, Magda E. Haidar, Procuradora General Auxiliar,* abogados del recurrido.

PER CURIAM: El recurso que aquí consideramos (¹) ataca la valoración dada por el Tribunal Superior, Sala de Expro-

---

(¹) El recurso ante nos se originó como una apelación. Una de nuestras Salas de Despacho lo consideró como una solicitud de revisión y lo denegó.

piaciones, a 82.21 cuerdas, de un total de 158.3973 cuerdas en la vecindad del Aeropuerto Mercedita, en Ponce, expropiadas por el Estado para fines de ampliar las facilidades de dicho aeropuerto. El 17 de octubre de 1968 el Estado consignó $856,889.00 como justa compensación de las 158.3973 cuerdas expropiadas. La Sala recurrida determinó en su sentencia que la justa compensación debe ser $1,232,963.65, y ordenó al Estado consignar una suma adicional a la originalmente consignada de $371,896.65 (²) más intereses al 6% anual sobre esta cantidad contados desde el 17 de octubre de 1968.

Al hacer la determinación sobre la compensación que el Estado debe pagar, el tribunal de instancia concluyó que de las 158.3973 cuerdas expropiadas, 76.1873 cuerdas debían pagarse a $12,000 cada una, y las restantes 82.21 a $3,000. Se basó en que el mejor uso para las 76.1873 cuerdas es uno industrial, mientras que el mejor uso de las restantes 82.21 cuerdas es agrícola, incrementado por su potencial para construir facilidades de ayuda a la navegación aérea.

La recurrente no cuestiona y acepta el valor dado a las 76.1873 cuerdas. Su recurso pretende que revisemos el valor que como justa compensación concedió la Sala sentenciadora a las 82.21 cuerdas. Sus argumentos pueden resumirse así: que el tribunal no podía fraccionar la finca expropiada para fines de su valoración, y que al hacerlo se apartó de lo estipulado en un contrato de arrendamiento otorgado en 1954 entre la Autoridad de Transporte de Puerto Rico y la recurrente, que debe considerarse como la "ley del caso"; que el tribunal

---

La parte recurrente solicitó reconsideración y, pendiente su consideración, la recurrente nos informó sobre "graves errores descubiertos después de sentencia," e invocó la Regla 49.2 de Procedimiento Civil para que se dejara sin efecto. Informados que el tribunal de instancia se negó a dejar sin efecto o modificar su sentencia bajo dicha Regla, decidimos reconsiderar y expedimos el auto.

(²) Este resultado toma en consideración $4,177 que se pagaron por el hangar, que se descontaron a la recurrente por pertenecer a la Sucesión Valdivieso, demandada en el mismo pleito de expropiación.

aplicó incorrectamente los reglamentos de la Agencia Federal de Aviación y determinó que localmente pueden aprobarse reglamentos sobre navegación aérea que conflijan con los federales; que el tribunal erró al resolver que la recurrente estaba impedida, por la doctrina de cosa juzgada, de reclamar en este pleito de expropiación, iniciado en 1968, lo que no reclamó en otro pleito, también sobre expropiación, iniciado en 1963; que erró el tribunal al resolver que el Aeropuerto Mercedita fue tácitamente zonificado en 1954; y que la sentencia no tiene apoyo en la prueba.

Las cuestiones planteadas tienen su entronque en un contrato de arrendamiento celebrado en 1954 entre la Autoridad de Transporte de Puerto Rico, antecesora de la Autoridad de los Puertos, y la Sociedad Civil Agrícola e Industrial Sucesión J. Serrallés, aquí recurrente.[3] Para aquella fecha la recurrente operaba una pista de aterrizaje o aeropuerto privado en terrenos de su propiedad en las inmediaciones de la Central Mercedita en Ponce. En virtud del referido contrato de arrendamiento el aeropuerto pasó a la jurisdicción de la Autoridad de Transporte. En su cláusula cuarta el contrato disponía:

"En el evento de que la Arrendataria o el Estado Libre Asociado de Puerto Rico requiera la expropiación de terrenos adicionales adyacentes para fines de aeropuerto, la Arrendataria o el Estado Libre, deberá, como parte de dicha expropiación, expropiar los terrenos arrendados. En la expropiación de los terrenos arrendados, la valoración no incluirá cualquier valor adicional que las mejoras o edificios construidos por la Arrendataria pudieran haberle dado a dicho predio, pero el hecho del anterior uso y valor de dicho predio como aeropuerto privado, así como el mejor uso a que dichos terrenos pudieran dedicarse, excepto como un aeropuerto comercial, será considerado como un factor en su valoración.

---

[3] Dicho contrato fue presentado como prueba por la recurrente en la vista celebrada por el tribunal recurrido al considerar la moción bajo la Regla 49.2, a que nos referimos en el escolio 1.

Cualquier terreno adicional que pudiera ser requerido por la Arrendataria o por el Estado Libre, si fuese expropiado por procedimientos de dominio eminente o de otro modo, se compensarán a su valor entonces a menos que se llegue a un acuerdo entre las partes respecto a dicho valor en dicho entonces."

En el 1963 el Estado expropió 27.807 cuerdas a la recurrente, que incluían el predio que ocupaba el aeropuerto Mercedita y tres predios adyacentes, que fueron usados para ampliar la pista existente y mejorar otras facilidades del aeropuerto. La compensación que finalmente se concedió en este primer pleito se fijó conforme a una estipulación de las partes. Al aprobarla, expresó el tribunal:

"El Tribunal, luego de apreciar en conjunto el enorme cúmulo de prueba presentada por ambas partes, le imparte su aprobación a la transacción concertada, teniendo principalmente en consideración, entre otros muchos factores, que la propiedad debió haber sido tasada como una unidad global, como finalmente se concluyó en las conversaciones habidas en Corte, y que se debió haber seguido el acuerdo convenido entre las partes al perfeccionarse el contrato de arrendamiento, que obra en autos, en relación con el mejor uso a considerarse al efectuarse la evaluación de la propiedad arrendada o de cualquiera otra que se adquiriera por medio del recurso de Expropiación Forzosa. El método que finalmente se ha usado para lograr esta transacción y el que este Tribunal aprueba es el método correcto, ya que lo indicado en el contrato en cuanto a este extremo constituye la ley del caso, que debió haberse seguido desde el principio."

Es en orden a esas expresiones que alega ahora la recurrente que erró el tribunal en el caso que motiva el presente recurso, al señalar que el tribunal no podía fraccionar la finca expropiada al valorarla, ni prescindir de la cláusula del contrato de arrendamiento en cuanto imponía fijar la compensación conforme al mejor uso a que los terrenos puedan dedicarse.

No creemos que la frase "que la propiedad debió haber sido tasada como una unidad global" expresada en la sentencia

del caso del 1963 tenga el alcance de impedir que en el caso de 1968 se hicieran valoraciones distintas por predios, basados en su cercanía al aeropuerto y el mejor uso a que puedan destinarse. Ese fue precisamente el criterio que las partes contratantes señalaron en la cláusula cuarta del contrato, antes transcrita. Es de notarse que ese mejor uso, si ha de seguirse el criterio esbozado en el contrato, no podía tomar en consideración el uso de los terrenos "como un aeropuerto comercial." Así reza la cláusula cuarta.

■ Cuando, como en el presente caso, se trata de un predio de más de 150 cuerdas, unas más distantes que otras de la zona restringida del aeropuerto, y fácilmente separables en sectores conforme al mejor uso a que cada sector pueda ser dedicado, se justifica y es conveniente el método de valoración a base de sectores o porciones. Este método fue aceptado como bueno en *Pueblo* v. *Sucesión Quiñones*, 71 D.P.R. 261, 265 (1950), y no vemos razón para rechazarlo. Nichols, *On Eminent Domain*, vol. 4, sec. 12–314, se expresa sobre el particular:

"Cuando los distintos segmentos de una parcela son susceptibles de valoración a base de su mejor uso, constituye un error atribuirle una unidad de valor global o promedio a la parcela completa." (Traducción nuestra.)

Véanse además, *Frontier Town Properties, Inc.* v. *State*, 296 N.Y.S.2d 90 (1968); *Fonda, J. & G. R. Co.* v. *State*, 287 N.Y.S.2d 134, (1968); *Evans* v. *State*, 285 N.Y.S.2d 626 (1967).

■ El contrato de arrendamiento en que tanto énfasis pone la recurrente, de ser obligatorio para fines de la expropiación que aquí nos ocupa, no impide el uso del método de fraccionamiento del predio para fines de su valoración. Las limitaciones al poder del Estado en materia de expropiación de propiedad privada para uso público no se presumen. El poder de expropiación forzosa es inherente al poder soberano del Estado

y como tal es inalienable y no puede ser negociado. Nichols, *On Eminent Domain,* vol. 1, sec. 1-13 (4) ; sec. 1.141 Sup. 1973, Jahr, *Eminent Domain,* págs. 3–4. La única limitación del Estado es pagar "una justa compensación" y actuar "de acuerdo con la forma provista por ley." Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 9.

■ Es inevitable que el terreno que está más inmediato a la pista de aterrizaje, particularmente en sus prolongaciones para el aterrizaje y despegue de aviones, está mucho más limitado que los más alejados. En los primeros la construcción de edificaciones es inaceptable desde el punto de vista de la seguridad de la navegación aérea. En los laterales las construcciones tienen por necesidad que obedecer a limitaciones de altura, también en obediencia a la seguridad. Esas consideraciones, lejos de ser arbitrarias, son razonables al determinarse el mejor uso a que los terrenos pueden dedicarse. El tribunal recurrido, en el ejercicio de su sana discreción, consideró que las 76.1873 cuerdas, que quedan más distantes de las zonas restringidas, tienen un potencial industrial, como mejor uso, y los valoró a $12,000 la cuerda. Las 82.21 cuerdas, cercanas a la pista, están tan limitadas por su proximidad a ella, que su mejor uso no puede ser otro que el agrícola, incrementado por su potencial para construir facilidades de ayuda a la navegación aérea, y determinó su valor a $3,000 la cuerda. Esas determinaciones, por tratarse de un tribunal especializado, merecen particular deferencia, sobre todo en un caso como el presente, de prueba abundante, y en que la sentencia del tribunal refleja en sus 47 páginas una cuidadosa y ponderada consideración de todos los factores envueltos.

■ Los planteamientos relativos a la aplicación de los reglamentos federales, a la doctrina de cosa juzgada, y a la alegada zonificación tácita del Aeropuerto Mercedita son frívolos. Contrario a lo que apunta la parte recurrente, el

tribunal a quo no concluyó que en Puerto Rico se pueden aprobar reglamentos que estén en conflicto con los federales. El tribunal se limitó a explicar la relación entre las diferentes disposiciones reglamentarias. El hecho de que las reglamentaciones federales establezcan limitaciones de altura no excluye el poder de la Junta de Planificación de conceder o denegar permisos de construcción en zonas de aeropuerto. Y el hecho de que no se hiciera una zonificación expresa del aeropuerto Mercedita no impide que se reconozcan restricciones en bien de la seguridad pública.

■ El tribunal recurrido concluyó que la reclamación por daños por segregación hecha por la recurrente constituye cosa juzgada en el pleito del 1963. Tiene razón. En aquel pleito, entre las mismas partes, y originado en el mismo asunto que el del 1968, la demandada aquí recurrente no reclamó tales daños. Una sentencia final y firme, como la del caso del 1963, constituye cosa juzgada no solamente en relación con las cuestiones planteadas, sino también en relación con las que se pudieron plantear. *Mercado Riera* v. *Mercado Riera,* 100 D.P.R. 940 (1972); *Isaac Sánchez* v. *Universal C.I.T. Credit,* 95 D.P.R. 372 (1967); *Capó Sánchez* v. *Srio. de Hacienda,* 92 D.P.R. 837 (1965); *Riera* v. *Pizá,* 85 D.P.R. 268 (1962).

El último planteamiento—que la sentencia no tiene apoyo en la prueba—no es discutido específicamente por la recurrente. Una lectura de las determinaciones que sobre los hechos hizo el tribunal de instancia, que entra en numerosos detalles sobre las pruebas, demuestra su cuidadosa evaluación de la misma.

*Se confirmará la sentencia del tribunal a quo.*

El Juez Presidente Señor Trías Monge se inhibió y el Juez Asociado Señor Dávila no intervino.