La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
El municipio autónomo de Guaynabo acude a nosotros mediante los recursos CC-2009-16 y CC-2009-25. Éstos presentan controversias relacionadas con el procedimiento especial de la expropiación forzosa. Específicamente, se nos solicita que aclaremos si el Estado tiene que establecer la constitucionalidad del uso público de la expropiación que solicita ante el tribunal o, por el contrario, si la parte con interés sobre el bien expropiado tiene la carga de probar la inexistencia de ese uso público. Asimismo, debemos resolver si el municipio autónomo de Guaynabo tiene que con-tar con una consulta de transacción pública aprobada por la Junta de Planificación antes de realizar una expropia-ción forzosa. Por ambos recursos tratar controversias simi-lares, el 8 de mayo de 2009 los expedimos y consolidamos. Veamos los hechos pertinentes.
I
En noviembre de 2005 y marzo de 2006, el Municipio Autónomo de Guaynabo (Municipio) presentó en el Tribu *211 nal de Primera Instancia varias peticiones de expropiación forzosa para adquirir ciertos terrenos en la barriada Mainé, ubicada en el barrio Frailes del mismo municipio.(1) Junto con cada una de las peticiones presentó también un legajo que incluía: (1) un documento con la descripción de cada inmueble, la compensación que habría de consignarse y las personas con interés; (2) una moción para la adquisi-ción y entrega material de la propiedad, y (3) una declara-ción del alcalde de la ciudad. Sobre el uso público de la expropiación, en esa declaración el Municipio expresó:
... La adquisición de la propiedad objeto de este procedimiento es de necesidad y utilidad pública, ya que cumple con el pro-pósito del [Municipio] y la Comunidad en general, realizar po-lítica pública y además, para la realización de cualesquiera programas encaminados a lograr los propósitos de la ley, creando los Municipios ....
El interés que el [Municipio] se propone adquirir en la(s) referida(s) propiedad(es) para el fin público indicado es el de un título de dominio absoluto ... para llevar a cabo el Proyecto de Vivienda de Interés Social “Villas de Mainé, Guaynabo, PR”
El declarante, así como la Asamblea Municipal de Guay-nabo, en armonía con la facultad que para ello le ha sido con-ferida por las leyes ... ha determinado que la adquisición de la(s) propiedad(s)(sic) objeto de esta acción es de utilidad pú-blica, necesaria y conveniente para el proyecto “Villas de Mainé, Guaynabo, PR”. Caso Núm. CC-2009-25, Apéndice del Recurso de certiorari, pág. 67.
Los propietarios de los terrenos que el Municipio intere-saba adquirir (recurridos) contestaron las peticiones de ex-propiación, impugnando su uso público, entre otros asuntos.
A. En el caso CC-2009-25, los recurridos presentaron ante el foro primario una Moción de Impugnación del Fin Público, en la cual alegaron que la petición de expropiación *212 carecía de una consulta de transacción pública aprobada por la Junta de Planificación(2) y una declaración específica de uso público. Cumpliendo con una orden del tribunal, el Municipio presentó una réplica para informar que el fin público de la expropiación era la construcción de un pro-yecto público de vivienda con interés social. Con el objetivo de aclarar esa finalidad el Municipio señaló:
El proyecto que se desarrolla en la Comunidad Mainé de Guaynabo, dirigido a ofrecer alternativas viables de vivienda a familias de escasos recursos económicos residentes en dicha ciudad, presenta como objetivos principales entre otros, au-mentar la disponibilidad de viviendas nuevas, seguras, sani-tarias y económicamente a[s]equibles para familias de escasos recursos económicos y fomentar el desarrollo urbano de la ciu-dad mejorando la calidad de vida de los residentes.
La obra pública, identificación que el gobierno hace sobre las necesidades de una comunidad y la manera de satisfacer-las, para la que se expropia en este caso, es un desarrollo de viviendas de interés social que establece en la Comunidad Mainé un proyecto modelo que inicia la renovación urbana de todo el sector, política pública de la administración municipal dirigida a la rehabilitación y renovación de la infraestructura y calidad de vida de los residentes de la comunidad Mainé de Guaynabo. (Énfasis en el original.) Caso Núm. CC-2009-25, Apéndice del Recurso de certiorari, pág. 73.
El Municipio también solicitó al foro primario que le permitiera desfilar prueba sobre ese fin público en una vista que estaba próxima a celebrarse. Posteriormente, los recurridos presentaron ante el Tribunal de Primera Ins-tancia una Moción Solicitando Desestimación de la Peti-ción de Expropiación Forzosa por Inconstitucionalidad del Fin Público, en la cual argüyeron que el proyecto de vi-vienda de interés social alegado por el Municipio como fin público era inconstitucional. Ello debido a que el Manual *213 de Criterios para el Otorgamiento de Subsidios de Vi-vienda para Hogar Propio y Seguro en el Municipio de Guaynabo de 1997 (Manual de Subsidios de Vivienda), que alegadamente utilizaría el Municipio para seleccionar los beneficiarios del proyecto de vivienda, era inconstitucional de su faz por negar sus beneficios a individuos que no son ciudadanos americanos y por imponer condiciones contra-rias a la Constitución del Estado Libre Asociado de Puerto Rico.(3)
El Tribunal de Primera Instancia emitió una resolución, el 25 de septiembre de 2006, en la cual declaró “no ha lu-gar” la moción que impugnaba la constitucionalidad del fin público del proyecto del Municipio, y señaló una próxima vista para pasar juicio sobre el fin público de la expropiación. El tribunal advirtió a los recurridos que de no estar preparados cuando se celebrara la vista siguiente, desestimaría su impugnación sobre el fin público y conti-nuaría con los procedimientos de la expropiación.
El 27 de octubre de 2006, los recurridos acudieron al Tribunal de Apelaciones mediante un recurso de certiorari. Estando pendiente el recurso ante el foro apelativo inter-medio y sin que el Tribunal de Primera Instancia hubiese celebrado la vista sobre la impugnación del fin público de la expropiación, el 7 de marzo de 2007 el Municipio solicitó *214 al foro primario que ordenara a los recurridos desalojar las propiedades objeto de expropiación. Ese foro concedió la petición, ordenando el lanzamiento de los recurridos el 15 de marzo de 2007. Ante tal suceso, el 29 de marzo del mismo año, éstos presentaron una moción en auxilio de jurisdicción al Tribunal de Apelaciones, el cual ordenó la paralización de los procedimientos en el foro recurrido. Así las cosas, luego de examinar el caso en sus méritos, ese tribunal dictó sentencia para revocar tanto la resolución como la orden del foro primario y decretó que se celebrara una vista evidenciaría para dilucidar el uso público del proyecto. Asimismo puntualizó que el Municipio debía pre-sentar prueba sobre la utilidad y necesidad del fin público, mientras que los recurridos tendrían derecho a desfilar prueba con miras a impugnar ese fin público.
De la referida sentencia acude ante nosotros el Munici-pio mediante un recurso de certiorari y alega que el Tribunal de Apelaciones erró al determinar que corresponde al Estado en primera instancia probar la validez, necesidad y viabilidad del fin público de la expropiación.
B. Por otro lado, en el caso CC-2009-16, los recurridos también presentaron ante el foro primario dos mociones de desestimación. Al igual que en los procedimientos descri-tos, una de las mociones impugnaba la constitucionalidad del fin público de la expropiación por motivo del Manual de Subsidios de Vivienda que alegadamente utilizaría el Mu-nicipio para brindar sus beneficios; mientras la segunda moción requería la presentación de una consulta de tran-sacción pública aprobada por la Junta de Planificación.
En este procedimiento el Tribunal de Primera Instancia celebró una vista argumentativa sobre impugnación de fin público. Luego de escuchar los argumentos de las partes, el foro primario declaró “no ha lugar” ambas mociones de des-estimación y expresó en su Resolución de 10 de octubre de 2006: “Que habiendo la parte con interés desfilado la prue-ba *215 (4) en cuanto a la impugnación al fin público, entiende [el tribunal] que la misma no es suficiente para impugnar el fin público de una vivienda de carácter social que se han (sic) presentado en el caso.” Tal resolución fue notificada el 5 de septiembre de 2008.
Inconformes con tal determinación, el 6 de octubre de 2008 los recurridos acudieron ante el Tribunal de Apelacio-nes, quien dictó sentencia para revocar la resolución del foro inferior y ordenó al Municipio presentar evidencia so-bre la utilidad y necesidad del fin público del proyecto pro-puesto para la expropiación. Asimismo, el foro apelativo intermedio concluyó que al amparo del Reglamento de Pro-cedimientos Adjudicativos de la Junta de Planificación y la Orden Ejecutiva Núm. 4 de 20 de enero de 2004, el Muni-cipio tenía que presentar en el tribunal inferior una “con-sulta de ubicación sobre transacción pública” debidamente autorizada por la Junta de Planificación para cada uno de los inmuebles objeto de expropiación.
Nuevamente, acude ante nosotros el Municipio me-diante recurso de certiorari y alega que el Tribunal de Ape-laciones erró al determinar que le corresponde al Estado en primera instancia probar la validez, necesidad y viabi-lidad del fin público de la expropiación. Igualmente im-pugna el requerimiento de presentar como parte de su evi-dencia una consulta aprobada por la Junta de Planifica-ción.
Habida cuenta de que los recursos fueron expedidos y consolidados, así como examinados los alegatos de las par-tes, pasamos a evaluar el derecho aplicable.
*216 II
A. El derecho fundamental a disfrutar de la propiedad privada está reconocido expresamente en nuestra Constitución. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. Empero, en repetidas ocasiones hemos aclarado que éste no es absoluto, pues está sujeto al poder inherente del Estado de establecer restricciones sobre la propiedad de los ciudadanos. Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 D.P.R. 409 (2008); Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991); E.L.A. v. Registrador, 111 D.P.R. 117 (1981); E.L.A. v. Rosso, 95 D.P.R. 501 (1967).
Un ejemplo de este poder inherente es la facultad del Estado para adquirir la titularidad de bienes privados a través de la expropiación forzosa, también conocida como dominio eminente. Aut. Carreteras v. 8,554.741 m/c I, 172 D.P.R. 278, 291 (2007). Véase, también, Estado v. Fajardo Sugar Co., 79 D.P.R. 321 (1956). Sin embargo, esta facultad encuentra límites en nuestra Constitución mediante una importante garantía, a saber, que “[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley”. Art. II, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 323. Cónsono con la citada protección constitucional, el Artículo 1930 del Código Civil establece que “[n]adie podrá ser privado de su propiedad sino por autoridad competente, por causa justificada de utilidad pública o beneficio social, y mediante el pago de una justa compensación que se fijará en la forma provista por ley”. 31 L.P.R.A. see. 1113.
De otra parte, la Asamblea Legislativa puede ejercer su autoridad de expropiación directamente o delegándola en otras entidades o funcionarios públicos. 32 L.P.R.A. secs. 2902 y 2905; M. Mercado e Hijos v. Tribl. Superior, 85 D.P.R. 370, 376 (1962). Según ese principio, la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto *217 Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.RR.A. see. 4001 et seq., otorgó a los mu-nicipios el poder de realizar expropiaciones forzosas en sus límites territoriales por cuenta propia o a través del Gober-nador de Puerto Rico, sujeto a las leyes generales y órde-nes ejecutivas aplicables. 21 L.P.R.A. sees. 4051 y 4453.
Ante la normativa reseñada, hemos reiterado que cuando el Estado, o una entidad designada por éste, pretende adquirir la propiedad de una persona mediante ese poder inherente, tiene que seguir el procedimiento dispuesto en la Ley de Expropiación Forzosa, Ley de 12 de marzo de 1903, según enmendada, 32 L.P.R.A. sec. 2901 et seq., y la Regla 58 de Procedimiento Civil, 32 L.P.R.A. Ap. V. Véanse: Aut. Tierras v. Moreno Ruiz Dev. Corp., supra; E.L.A. v. Soc. Civil Agrícola e Industrial, 104 D.P.R. 392 (1975); Estoves v. Rabell, 36 D.P.R. 130 (1926).
Tanto la Ley de Expropiación Forzosa como la Regla 58, supra, requieren la presentación de una demanda o peti-ción en el tribunal para comenzar el procedimiento judicial de expropiación. 32 L.P.R.A. see. 2905; Regla 58.3, supra. Junto a la petición, de ordinario, se presenta un legajo de expropiación que incluye, entre otros documentos, una de-claración de adquisición y entrega material de la propiedad. A.C.T. v. Iñesta, 165 D.P.R. 891, 902 (2005). Si la declaración cumple con todos los requisitos dispuestos en la Ley de Expropiación Forzosa y se deposita en el tribunal la compensación estimada, el título de dominio queda entonces investido en la entidad que solicitó la expropiación. 32 L.P.R.A. see. 2907. Véanse, además: A.C.T. v. Iñesta, supra, págs. 902-903; Pueblo v. 632 Metros Cuadrados de Terreno, 74 D.P.R. 961, 971 (1953); Pueblo v. Registrador, 70 D.P.R. 260 (1949). Desde ese instante, el tribunal puede fijar el término y las condiciones según las cuales los poseedores de los bienes expropiados deberán entregar la posesión material de éstos al demandante. 32 L.P.R.A. sec. 2907.
*218 Ahora bien, aunque el procedimiento de expropiación es de naturaleza in rem, al inicio del pleito el Estado tiene la obligación de acumular como demandados a las personas que tengan un interés en la propiedad y “a la sazón se conozcan”. Regla 58.3(b), supra; 32 L.P.R.A. sec. 2905; A.C.T. v. Iñesta, supra, pág. 904. Posteriormente, pero siempre antes de celebrarse cualquier vista sobre la justa compensación, el Estado tendrá que traer al pleito aquellas personas con interés sobre la propiedad que se conozcan, luego de realizar diligencias razonables en el Registro de la Propiedad. Regla 58.3(b), supra; A.C.T. v. Iñesta, supra, pág. 904; Pueblo v. McCormick, Alcaide & Co., 78 D.P.R. 939 (1956).
Una vez el titular de dominio es debidamente notificado del procedimiento de expropiación, éste tiene la oportuni-dad de presentar una contestación ante el tribunal y pre-sentar las defensas y objeciones que tenga tanto sobre el “carácter público del uso a que se destinará la propiedad, como a la cuantía declarada como justa compensación”. A.C.T. v. 780,6141m2, 165 D.P.R. 121, 133 (2005). Véanse, también: Regla 58.5, supra; J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. JTS, T. II, 2000, pág. 1082. Cabe aclarar que los reclamos respecto al fin público y a la justa compensación que presente la parte demandada en su contestación, no impedirán que el Es-tado obtenga provisionalmente el título y la posesión material de la propiedad una vez presente la declaración de adquisición y entrega material mencionada. No obstante, el dominio que así adquiere el Estado
... no es de carácter final pues ... está sujeto a ser derrotado cuando, en un caso como el presente, se ha atacado la facultad del Gobierno para expropiar, poniéndose así en controversia la validez de la expropiación. El título no queda indefectible-mente adquirido por el Gobierno porque adopte el procedi-miento auxiliar. Es necesaria a tal fin la sentencia final en el ... pleito de expropiación. Iriarte Miró v. Srio. de Justicia Hacienda, 84 D.P.R. 171, 179 (1961).
*219 En otras palabras, si el Estado presenta una declaración de adquisición y entrega material válido junto a su petición de expropiación, y la parte con interés la contesta para impugnar el fin público o la justa compensación, el tribunal debe ordenar provisionalmente el traslado de dominio y entrega material. Ello no obstante, será necesario que continúe con la celebración del juicio y evalúe la evidencia que allí presenten las partes para que pueda entonces dictar una sentencia definitiva para determinar los derechos de aquéllos. Es decir, será en la sentencia final en la cual resolverá si le asiste al Estado el derecho de expropiación y el monto de la justa compensación que deberá recibir la parte con interés, tal como lo ordena la Ley de Expropiación Forzosa. 32 L.P.R.A. sec. 2911. Véase The American Railroad Co. of P.R. v. Ortiz, 16 D.P.R. 286, 301 (1910) (“Toda consideración de utilidad y conveniencia pública debe supeditarse al derecho del propietario a su propiedad, hasta que dicho derecho sea suspendido o extinguido de estricto acuerdo con la ley del país”).
En cuanto a la referida evaluación que debe realizar el juzgador sobre la petición de expropiación forzosa, hemos sostenido que “[c]omo la facultad de expropiar es un atributo inherente a la soberanía del Estado, las únicas limitaciones que pueden reconocerse a su ejercicio son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compensación por ella”. Aut. Tierras de v. Moreno & Ruiz Dev. Corp., supra, pág. 425. Véase E.L.A. v. Soc. Civil Agrícola e Industrial, supra.
La Asamblea Legislativa tiene una gran discreción para determinar lo que constituye un fin público para la expropiación, así como su utilidad y necesidad. McCormick v. Marrero, Juez, 64 D.P.R. 260, 267 (1944). Véanse: Kelo v. New London, 545 U.S. 469, 482-483 (2005); O’Neill v. Leamer, 239 U.S. 244, 253 (1915). Ello nos ha llevado a expresar que cuando la Legislatura declara el uso público de una expropiación antes de que el Estado presente su *220 acción en el tribunal, existe una presunción de que el uso así declarado es, en efecto, un fin público, según lo exige nuestra Constitución. Estado v. Fajardo Sugar Co., supra, pág. 334; McCormick v. Marrero, Juez, supra. Véase, también, 2A Nichols on Eminent Domain Sec. 7.03 [11] [b] (2003). Esta presunción, al menos, beneficia al Estado en cuanto sirve de fundamento para obtener el dominio provisional de los bienes mediante la presentación de una decla-ración de adquisición y entrega material de la propiedad objeto de expropiación; mecanismo auxiliar que dispone la Ley de Expropiación Forzosa y el cual discutimos previamente. 32 L.P.R.A. see. 2907.
Por otro lado, aunque los tribunales no estamos llamados a revisar la sabiduría o conveniencia de las declaraciones legislativas sobre el uso público, McCormick v. Marrero, supra, en última instancia, la determinación sobre si un uso en particular es público y legítimo, según el palio de nuestra Constitución, corresponde a la Rama Judicial. Estado v. Fajardo Sugar Co., supra. Véase Nichols on Eminent Domain, supra, Sec. 7.03[11] [a].
Sobre la figura del uso público en nuestra jurisdicción, podemos afirmar que lejos de gozar de una definición clara y precisa, ésta se ha venido desarrollando paulatinamente a través de la jurisprudencia. Igual ha sido el caso en la jurisdicción federal. Véanse Kelo v. New London, supra, pág. 483 (“For more than a century, our public use jurisprudence has wisely eschewed rigid formulas and intrusive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power”); E.E. Meidinger, The “Public Uses” of Eminent Domain: History and Policy, 11 Envtl. L. 1, 13 (1980).
En última instancia, la función judicial es velar por que la expropiación que interesa el Estado “cont[enga] elementos de beneficio público y el propósito que se trata de realizar [sea] de carácter público”. McCormick v. Marrero, Juez, supra, pág. 267. Véase, además, Estado v. Fa- *221 jardo Sugar Co., supra, pág. 328 esc. 4 (“En Puerto Rico se ha seguido la doctrina liberal que acepta el significado del término ‘uso público’ como sinónimo de ‘beneficio púb-lico’ ”). (Citas omitidas.) Esa finalidad podría ser alcanzada por las entidades gubernamentales aunque los beneficios que promueve la expropiación no aprovechen directamente a toda una comunidad, o ésta no reciba todo el beneficio, íd., pág. 335.
Mas sin embargo, debemos recordar que una vez esta-blecido que la expropiación requerida por el Estado en efecto tiene un fin público, “no corresponde a los tribunales revisar las determinaciones sobre la naturaleza o exten-sión del derecho a adquirirse, la cantidad de terreno a ex-propiarse, la necesidad o lo adecuado del sitio en particular, porque ésta es una función que ejerce la [Legislatura bien directamente o delegándola en agencias y funcionarios”. Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra, pág. 425. Véase M. Mercado e Hijos v. Tribl. Superior, supra. Véanse, además: Berman v. Parker, 348 U.S. 26 (1954); 2 Cooley’s Constitutional Limitations 8th, 1143— 1147 (1997); A.D. Jahr, Law of Eminent Domain: Valuation and Procedure, Ed. Clark Boardman Co., 1957, pág. 355. En esas circunstancias sólo podemos intervenir con el fin propuesto por el Estado si éste implica una imposibilidad o no existe vínculo racional alguno entre la declaración legis-lativa y el objeto perseguido. Estado v. Fajardo Sugar Co., supra, pág. 330; E.L.A. v. Rosso, 95 D.P.R. 501, 537 (1967). En igual sentido, véanse: Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 240—241 (1984); United States ex rel. TVA. v. Welch, 327 U.S. 546, 552 (1946); Old Dominion Land Co. v. United States, 269 U.S. 55, 66 (1925).
B. Sobre las cargas que tienen las partes en los procedimientos de expropiación forzosa, hemos reiterado que cuando se objeta la compensación depositada por el Estado como justo precio, el dueño de la propiedad aunque formalmente sea el demandado pasa a ocupar la posición *222 del demandante y tiene que probar su derecho a obtener una compensación mayor a la consignada. A.C.T. v. 780,6141m2, supra, pág. 133; Martínez Rivera v. Tribunal Superior, 85 D.P.R. 1, 11 (1962); Pueblo v. McCormick, Alcaide & Co., supra, pág. 952; Pueblo v. 632 Metros Cuadrados de Terreno, supra, pág. 976; Canino v. Tribl. de Expropiaciones, 70 D.P.R. 152, 153—154 (1949); Pueblo v. Anadón, 69 D.P.R. 822, 825 (1949). Véanse también,: United States ex rel. TVA v. Powelson, 319 U.S. 266, 273 (1943) (“The burden of establishing the value of the lands sought to be condemned was on respondent [(the proprietor)].”); United States v. Toronto Nav. Co., 338 U.S. 396, 406 (1949); United States v. John J. Felin & Co., Inc., 334 U.S. 624, 631 (1948); Marion & Rye Valley Ry. Co. v. United States, 270 U.S. 280, 285 (1926).
Sin embargo, respecto al uso público de la expropiación, no existe en la Ley de Expropiación Forzosa o nuestra ju-risprudencia una norma clara sobre quién tiene la carga de probar su validez. La respuesta a esa interrogante, como veremos, está implícita en la Constitución del Estado Libre Asociado y en nuestros pronunciamientos previos sobre los procedimientos de la expropiación forzosa.
Examinemos en primer lugar la discusión de varios de-legados de la Convención Constituyente de Puerto Rico a propósito de una enmienda propuesta a la See. 9 del Artí-culo II de la Constitución, L.P.R.A., Tomo 1, en torno al uso público de las expropiaciones forzosas:
Srta. PRESIDENTA: Señor Secretario, al leer, como en este caso, sería bueno que al llegar a la enmienda hiciera un énfa-sis, de manera que los delegados pudieran saber cuál es la enmienda que se está [proponiendo].
Sr. SECRETARIO: “No se tomará o perjudicará la propiedad privada por razón de uso público, a no ser mediante declara-ción de necesidad y utilidad y el pago de una justa compensa-ción de acuerdo con la forma provista por ley.” Eso es la enmienda.
Sr. GARC[Í]A MÉNDEZ: ... Voy a explicar el fundamento de *223 mi enmienda. Señorita Presidenta y compañeros. El procedi-miento en Puerto Rico actualmente conlleva dos pasos o requi-sitos; uno es el que sea necesaria la propiedad a ser tomada por el gobierno, de necesidad pública; y dos, que se pague una justa compensación. Dejar la sección como está, llevaría en la práctica, en la práctica conllevaría el resultado siguiente: Que se alegaría en la acción que sencillamente por razón pública, genéricamente, por razón pública, pero a un arbitrio prudente de la autoridad competente por razón pública se toma esta propiedad y se deposita la cantidad de tanto. La única en-mienda que yo hago es, que quede claro que debe especificarse la declaración de utilidad y necesidad. En otras palabras, si el compañero Dávila Díaz tiene una casa residencia en el barrio X de Manatí, y el gobierno entiende que esa casa es de utilidad y necesidad para fines públicos, lo dice así, deposita la canti-dad de justa compensación y prosigue el caso. En la forma en que está, se elimina la declaración de utilidad y necesidad; que no quiere decir aquí que tenga que ser previa ....

No, lo que debe es consignarse en la acción las razones “de utilidad y conveniencia públicas”y entonces depositar la “justa compensación.” Pero si no se dice así, entonces por razón pú-blica puede ser todo. Es un fíat que lo cubriría absolutamente todo, al arbitrio prudente en unos casos, sensato en otros casos, pero un poco arbitrario, podría ser en algunos otros.

Sr. GUTI[É]RREZ FRANQUI: Señorita Presidenta. Mi única objeción a la enmienda es que la misma tiende a tras-tornar un lenguaje que ha sido objeto de innumerables deci-siones judiciales e interpretado infinidad de veces, tanto por ser el lenguaje de la Constitución de los Estados Unidos en materia de expropiación, como por haber sido el lenguaje hasta ahora existente en la Carta Orgánica.
No creo por un lado que debamos estar constantemente amarrados aquí a un lenguaje conocido y estricto; pero el len-guaje que tiene abundante y rica jurisprudencia de interpre-tación, no creo que debamos variarlo innecesariamente, cuando a nuestro juicio el concepto que trata de incorporar el compañero está implícito en este lenguaje.
Sr. GARC[Í] A MÉNDEZ: Señorita Presidenta.
Para ganar tiempo y no tomárselo a la Convención, ¿acepta el comité que trajo el informe, el punto de vista de que ésa es la interpretación de este precepto, sin mi enmienda?
Sr. BEN[Í]TEZ: Aceptamos el punto de vista expresado por el señor Gutiérrez Franqui.
*224 Sr. GARC[Í]A MÉNDEZ: O sea, ¿que está implícito que ha-brá la declaración de necesidad y utilidad o de uso público, de acuerdo con el sistema que se está usando a virtud de esos preceptos, tal como aparecen en la Constitución americana ... ? En ese caso, señorita Presidenta, siendo esto parte interpre-tativa del precepto, retiro mi enmienda.
Sr. REYES DELGADO: Señorita Presidenta.
Srta. PRESIDENTA: Señor Delgado.
Sr. REYES DELGADO: Yo quiero aclarar, para una pre-gunta al Presidente o al señor Procurador General, delegado Gutiérrez Franqui, que explicó esta situación. ¿Quiere eso de-cir que cada vez que se haya de tomar una propiedad, el tribunal pueda entrar a discutir si hubo justificación en la decla-ración de utilidad pública, aunque sea a posteriori ? O es que la [Asamblea] Legislativa lo dirá en la ley o se tomará en cuenta la acción de la Asamblea Legislativa; porque tal como yo en-tiendo, el punto levantado por el compañero García Méndez, es que al expropiar se pueda entrar a discutir, aunque no sea previamente, si hubo justificación en la declaración de utilidad pública, o no.
Y yo entiendo que ésa no es la situación.
Que se deje claro en el [acta] hasta dónde puede llegarse en eso.
Sr. GUTI[É]RREZ FRANQUI: La contestación a la pregunta del compañero, hasta donde yo la entiendo, y que es el estado de las decisiones que no queremos alterar mediante el uso de nuevo lenguaje, es, que la corte no puede ir más allá de deter-minar si el carácter o el uso a que se va a destinar la propie-dad constituye un fin público; pero no puede entrar a cuestio-nar la declaración específica que haga el poder legislativo de que esa propiedad es para tal fin público.
Sr. QUIÑONES: Una pregunta al compañero Gutiérrez Franqui. Pregunto yo, ¿y tampoco podría entrar la corte en la motivación del poder legislativo al hacer ese decreto?
Sr. GUTI[É]RREZ FRANQUI: [Clínicamente en el carácter de fin público, del propósito para el cual se expropia. Y no hemos querido, no, alterar el stare decisis, la situación de ju-risprudencia que existe en este momento.
Sr. D[Á]VILA D[Í]AZ: Señor Gutiérrez Franqui, de modo que el gobierno necesita cierta cantidad de terreno en tal o cual parte del país; tal y como está la situación hoy, la ley declara de necesidad y utilidad pública ese terreno; deposita la cantidad, el valor que él cree justo por ese terreno, en la corte; y toma posesión de la propiedad, ¿no es eso?
Sr. GUTI[É]RREZ FRANQUI: Toma posesión y título.
*225 Sr. D[Á]VILA D[Í]AZ: Y título. ¿Pero entonces el dueño no tiene ningún derecho a recurrir a una corte para que el go-bierno le pruebe que no es caprichosa esa decisión?
Sr. GUTI[É]RREZ FRANQUI: Sí, señor. Ese derecho existe, subsiste en su integridad.
Sr. D[Á]VILA D[Í]AZ: ¿Existe hoy?
Sr. GUTIÉRREZ FRANQUI: Existe hoy y subsistirá después de la aprobación de esta [(Constitución.
Sr. D[Á]VILA D[Í]AZ: Muy bien. (Corchetes suplidos y en el original, y énfasis suplido.) 3 Diario de Sesiones de la Conven-ción Constituyente de Puerto Rico 1552-1554 (1961).
El debate citado se produjo luego de que el delegado Miguel A. García Méndez propusiera su enmienda. Ésta buscaba limitar posibles abusos del poder de expropiación y actos arbitrarios por parte del Estado asegurando que éste siempre tuviera que expresar el uso público al cual destinaría la propiedad expropiada. De manera que seña-lar, en una acción de expropiación, que se trata de un fin público en general no sería suficiente. Esa enmienda fue retirada debido a que los delegados concluyeron que el len-guaje original de la Constitución implícitamente contiene el requerimiento que la enmienda pretendía adicionar.
Más adelante en el desarrollo de la discusión en torno al fin público, y ante la preocupación del delegado Juan Dá-vila Díaz respecto a que el Estado pudiera expropiar bienes con la mera declaración legislativa de utilidad pública y la consignación de la justa compensación en el tribunal, el delegado Víctor Gutiérrez Franqui aclaró que al ciudadano le asiste —tanto antes como después de la aprobación de la Constitución— el derecho a impugnar ante los tribunales la expropiación que interesa el Estado. Asimismo, el inter-cambio de palabras entre estos dos delegados sobre el “de-recho [del sujeto afectado por la expropiación] a recurrir a una corte para que el gobierno le pruebe que no es capri-chosa esa decisión”, evidencia que los miembros de la Con-vención Constituyente reconocían que el Estado tiene el de- *226 her de establecer el uso público de la expropiación, cuando los ciudadanos objetan en los tribunales ese uso.
Ante tales expresiones, las cuales arrojan luz sobre la cláusula constitucional que examinamos, debemos concluir que la entidad que insta la petición de expropiación forzosa tiene el peso de establecer que la expropiación propuesta responde a un fin público. Véase Nichols on Eminent Domain, supra, Vol. 5, Sec. 18.02[2] [b] (“The burden of proof on the right to take in de jure or direct condemnation cases is normally on the condemnor”), Sec. 18.04 (“The burden of proving a public purpose and a necessity for the taking initially rests on the condemning authority. Upon the presentation of supporting evidence, the burden shifts to the condemnee to prove illegality”)-
Un examen cuidadoso de nuestra jurisprudencia de-muestra que la determinación que hoy enunciamos con cla-ridad yacía implícita en pronunciamientos anteriores de este Tribunal.
En Pueblo v. García, 66 D.P.R. 504 (1946) —un caso en el que los demandados impugnaban la compensación que obtendrían por los bienes expropiados, mas no el uso público de la expropiación— resolvimos que cuando el dueño de una propiedad objeto de la expropiación se opone a ésta por estar inconforme con la compensación que el Estado le ofrece, es ese demandado quien tiene que probar su derecho a obtener una suma mayor. Por ello decimos que el demandado se convierte en demandante. En aquel entonces expresamos que esta regla responde a que la controversia entre las partes es simplemente si la suma depositada por el Estado debe ser superior.
Ahora bien, con su adopción también aclaramos que la regla aplicaba a casos de expropiación en los cuales “la única cuestión en controversia es el montante de la canti-dad que deba pagarse al dueño”. Pueblo v. García, supra, pág. 508. Conforme a ello, sólo hemos invertido el peso de la prueba para ponerlo sobre el demandado en casos de *227 expropiación forzosa cuando éste impugna la justa compensación. Véanse: Martínez Rivera v. Tribunal Superior, supra; Pueblo v. McCormick, Alcaide & Co., supra; Pueblo v. 632 Metros Cuadrados de Terreno, supra, pág. 976 (“cuando la cuestión en controversia en un caso de ex-propiación es el importe de la compensación, los casos re-suelven que (1) el demandado es en efecto el demandante; (2) éste debe presentar su evidencia en primer lugar; y (3) tiene el peso de la prueba en cuanto a valoración”); Canino v. Tribl. de Expropiaciones, supra, págs. 153-154 (“a los efectos de la valoración de una propiedad expropiada, el demandado se convierte en demandante y la contienda queda trabada cuando el demandado alega que no está conforme con la cantidad depositada por el El Pueblo”); Pueblo v. Anadón, supra.
El desarrollo de la norma descrita sirve de apoyo a nuestra determinación. En cuanto al fin público de una expropiación forzosa, el Estado sigue siendo el demandante en la acción que promueve y tiene la carga de establecer ese fin público. No hay razón para invertir la posición de las partes mientras se examina ese asunto. De manera que, aunque al Estado le favoreza una presunción prima facie de uso público cuando la Legislatura ha declarado previamente tal finalidad, ello no lo releva de tener que establecer en el tribunal el fin público de la expropiación que interesa. Véase Nichols on Eminent Domain, supra, Vol. 7A, Sec. G9A.03[4] (“Often, the condemnor benefits from a prima facie presumption that property condemned is taken for public use. Nonetheless, the condemnor has the burden of proving the public use to be made of the property”). Cuestionado el fin público por la parte afectada en la expropiación corresponde al Estado establecerlo.
Empero, debemos señalar que la norma que hoy enunciamos no supone la celebración de vistas evidenciarías en todo proceso de expropiación forzosa. Nos explica- *228 mos, si la entidad gubernamental que interesa obtener la propiedad de los predios de los demandados incluye en su petición de expropiación una declaración adecuada del fin público al que destinará la propiedad que pretende adqui-rir y la parte afectada no la cuestiona, la entidad guberna-mental habrá satisfecho la carga de establecer el uso pú-blico de la expropiación. Si por el contrario, la parte afectada impugna el fin público declarado, recae sobre el ente gubernamental probarlo. Para cumplir con el onus re-querido la parte expropiante muy bien puede: descansar en los documentos que presentó al tribunal como indicativos del fin público para el cual se expropia, o presentar ante el foro primario aquella evidencia adicional que éste estime sustenta el uso público del terreno expropiado. Correspon-derá al Foro de Primera Instancia determinar si celebra una vista evidenciara o argumentativa para dilucidar el asunto o si ello es innecesario, pero siempre teniendo pre-sente que el peso de la prueba de demostrar el uso público recae en la autoridad gubernamental.
En otras palabras, el fin público puede ser satisfecho mediante alegaciones específicas y bien hechas sobre la fi-nalidad de la expropiación con la documentación e infor-mación que así lo evidencie, aunque en otras ocasiones, podría requerirse la celebración de vistas evidenciarías para desfilar prueba a esos fines. Véase Jahr, op. cit., págs. 356-357 (“The condemnor must then prove that he possesses the power of eminent domain, [and] the public use .... Where, however, the defendant pleads an affirmative defense, the burden of proving the defense rests with the defendant”).
Adoptar una posición contraria a ésta sería desvirtuar los límites que impone sobre el Estado la See. 9 del Art. II de nuestra Carta de Derechos, supra; precisamente lo que los delegados de la Convención Constituyente querían evitar. Al exigir que el gobierno establezca el uso público de *229 la expropiación en los tribunales, nuestros ciudadanos ob-tienen la seguridad de que sus bienes se enajenan, no por motivaciones arbitrarias o caprichosas de funcionarios pú-blicos, sino en pos de alcanzar el mejor bienestar común. Recordemos que se trata de la intervención gubernamental con el derecho fundamental al disfrute de la propiedad pri-vada, el cual no debe ser destruido livianamente. Cf., City of Cincinnati v. Vester, 281 U.S. 439, 447 (1930) (“Otherwise, the taking of any land ... would be sustained on a bare recital. This would be to treat the constitutional provision as giving such a sweeping authority to municipalities as to make nugatory the express condition upon which the authority is granted”).
C. De otra parte, la Ley de Expropiación Forzosa no dispone qué documentos tienen que ser presentados ante el tribunal por la entidad que interesa realizar la expropiación. Tampoco dispone que sea necesario concretar procedimientos administrativos ante otros foros previo a la presentación de la acción en el foro judicial. La Regla 58 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), también era silente al respecto.
Sin embargo, la Regla 58.3(c) de las Reglas de Procedi-miento Civil de 2009 (32 L.P.R.A. Ap. V), sí requiere que junto a la demanda de expropiación se presente un legajo con varios documentos. Estos son: (1) un exhibit que con-tenga ciertos datos de la propiedad; (2) una certificación expedida por el Registro de la Propiedad; (3) una consulta de ubicación; (4) un plano de mensura; (5) un informe de valoración; (6) una declaración para la adquisición y en-trega material de la propiedad, y (7) un proyecto de resolución. íd.
Por otro lado, la Orden Ejecutiva Núm. 4 de 20 de enero de 2004 ordena que las agencias gubernamentales posean ciertos documentos antes de adquirir una propiedad in-mueble, incluso si la obtienen mediante una expropiación *230 forzosa. Boletín Administrativo Núm. OE-2004-4.(5) Entre otros, la orden ejecutiva requiere que las agencias posean una “copia certificada de la Consulta de Uso y Ubicación emitida por la Junta de Planificación”. Id.
El origen de la referida orden se remonta a la Orden Ejecutiva de 26 de febrero de 1987, Boletín Administrativo Núm. 4874A. En aquel entonces la orden aplicaba a todas las organismos del Estado, a saber: “departamentos”, “agencias”, “corporaciones públicas” y “municipios”. Esta aplicación permaneció inalterada luego de la promulgación de la Orden Ejecutiva Núm. 69 de 11 de octubre de 1991, Boletín Administrativo Núm. OE-1991-69, la cual en-mendó la orden original. No obstante, estas dos órdenes se derogaron por la Orden Ejecutiva Núm. 29 de 30 de junio de 2001, Boletín Administrativo Núm. OE-2001-29. Con esta última orden ejecutiva no sólo se establecieron nuevas normas para regular la adquisición de bienes inmuebles por el gobierno, sino que se dispuso que la orden sería “de aplicación exclusiva” a las agencias, definidas como: “todas las instrumentalidades y agencias de la Rama Ejecutiva, sus subdivisiones, y las corporaciones públicas”. Id. Final-mente, la Orden Ejecutiva Núm. 4 de 20 de enero de 2004, supra —vigente cuando se suscitaron los hechos de autos por haber derogado a la anterior— mantuvo el mismo len-guaje sobre su aplicación.
Luego de evaluar las normas discutidas hasta aquí, pa-semos a examinar las determinaciones de los tribunales recurridos.
*231 III
Tanto en el recurso CC-2009-16, como en el recurso CC-2009-25 —tras el foro primario concluir que las expropia-ciones en controversia promueven un fin público— el Tribunal de Apelaciones revocó las resoluciones recurridas y determinó que el Municipio tiene que establecer la validez, necesidad y viabilidad del uso público alegado en una vista evidenciaría. El foro apelativo intermedio también con-cluyó, en el recurso CC-2009-16, que parte de la evidencia que el Municipio tiene que presentar en la vista sobre el uso público ante el Tribunal de Primera Instancia es una consulta de transacción pública aprobada por la Junta de Planificación. Su decisión estuvo fundamentada en la Or-den Ejecutiva Núm. 4 de 20 de enero de 2004, supra, y el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244 del Departa-mento de Estado, 27 de diciembre de 1994, 23 R.P.R. see. 650.225. Atendamos cada uno de estos asuntos en orden.
Primeramente, sobre la carga del Municipio en cuanto a establecer el fin público de la expropiación, concluimos que no erró el Tribunal de Apelaciones. Seguir la norma discu-tida previamente, corresponde a la entidad que promueve la acción de expropiación forzosa, en este caso el Municipio, establecer el uso público de ésta. Así logramos imprimir vitalidad a la limitación constitucional que impone sobre el Estado la See. 9 de nuestra Carta de Derechos, supra, se-gún fue concebida por los delegados de la Convención Constituyente.
No obstante, al aplicar los principios esbozados al caso de autos debemos revocar las sentencias recurridas. Consi-deramos que el foro apelativo intermedio erró en tanto con-cluyó que era necesaria una vista evidenciaría para que el Municipio estableciera el fin público. Como vimos, el Es-tado puede cumplir con esa responsabilidad a través de los *232 documentos que presenta ante el tribunal, ya sea inicial-mente para instar su acción, o posteriormente para sustentarla.
Así, un examen cuidadoso del expediente revela que el Municipio —luego de haberse presentado la impugnación al uso público inicialmente alegado— brindó al Tribunal de Primera Instancia datos suficientes sobre el propósito de la expropiación como para que el foro primario pudiera con-cluir que había quedado establecido el fin público de la acción. En efecto, el Tribunal de Primera Instancia denegó las mociones que impugnaban el fin público de la expropia-ción porque lo entendió probado.
Según vimos, el Municipio explicó que el proyecto “Villas de Mainé” serán residencias de interés social. Este forma parte de un plan de desarrollo y renovación urbana que aumentará la disponibilidad de viviendas seguras y accesibles para familias de escasos recursos económicos. Semejante propuesta, sin duda, no sólo constituye un uso legítimo según nuestra Constitución puesto que adelanta un beneficio público, sino que es afín con otras previa-mente avaladas por esta Curia. Véase McCormick v. Marrero, supra, pág. 267 (“Es deber de todo gobierno, adoptar aquellas medidas que fueren necesarias para promover el bienestar y defender la salud de todos los ciudadanos, es-pecialmente de aquellos a quienes sus escasos medios de fortuna no les permiten adquirir un pedazo de tierra para edificar en ella sus hogares”). Véase, además, Nichols on Eminent Domain, supra, Sec. 7.06[22][a].
El referido uso público no fue derrotado por las alega-ciones de los demandados. Estos trataron de impugnarlo atacando la constitucionalidad del Manual de Subsidios de Vivienda que alegadamente utilizaría el Municipio para escoger los beneficiarios del proyecto. Sin embargo, tal eva-luación es ajena al proceso de expropiación forzosa. Hoy sólo tenemos que analizar si la expropiación que interesa *233 el Estado está motivada por un fin público. Si eventual-mente, habiendo obtenido el Municipio la titularidad de los predios, algunas personas estiman que éste lleva a cabo el proyecto “Villas de Mainé”, implantando reglas que contra-vienen nuestra Constitución, entonces ellos podrán instar las acciones que entiendan adecuadas a fin de cuestionar tal proceder. De manera que pasar juicio sobre la validez del referido Manual en este caso sería un ejercicio, cuando menos, a destiempo.
De otra parte, debido a que los tribunales no son el foro para dilucidar la necesidad o viabilidad de las expropiacio-nes que propone el Estado, M. Mercado e Hijos v. Tribl. Superior, supra, pues estamos limitados a evaluar la exis-tencia del uso público y la justa compensación, Aut. de Tierras de P.R. v. Moreno Ruiz Developer Corp., supra, tam-bién debemos revocar las sentencias recurridas, ya que exigen que el Municipio pruebe la necesidad y viabilidad de la petición de expropiación forzosa ante el foro primario. Los propietarios recurridos, sin embargo, mantienen su de-recho a argumentar como defensa la imposibilidad de lo-grar el uso propuesto por el demandante, así como la falta de nexo racional entre el uso y la declaración legislativa pertinente. Estado v. Fajardo Sugar Co., supra; E.L.A. v. Rosso, supra.
En tercer lugar, resolvemos que el Municipio no está obligado a presentar en los casos recurridos una consulta de transacción pública aprobada por la Junta de Planificación. La exigencia que impusiera el Tribunal de Apelaciones referente a la presentación de esa consulta no encuentra apoyo en nuestro ordenamiento.
Como vimos antes, independientemente de que la Or-den Ejecutiva Núm. 4 de 20 de enero de 2004, supra, apli-que o no a los municipios —asunto que no atendemos en esta opinión— aquélla ordena que la entidad gubernamen-tal que va a adquirir una propiedad inmueble mediante *234 expropiación forzosa posea una “consulta de uso y ubica-ción”, no una consulta de transacción pública como la que solicitan los recurridos.(6)
A su vez, debemos aclarar que aunque el Tribunal de Apelaciones también tomó en consideración el Reglamento Núm. 5244, supra, para ordenar la presentación de la re-ferida consulta, este había sido derogado por el Regla-mento de Procedimientos Adjudicativos de la Junta de Pla-nificación, Reglamento Núm. 6031 del Departamento de Estado, 12 de noviembre de 1999. Dejando ello a un lado, basta con decir que este Reglamento crea procedimientos administrativos ante la Junta de Planificación que son aje-nos al proceso judicial de expropiación forzosa. Nada de lo dispuesto en el referido Reglamento trata sobre adquisicio-nes de bienes inmuebles a través del poder inherente de expropiación.
IV
Por todo ello, procede revocar las sentencias del Tribunal de Apelaciones. Se dictará sentencia de conformidad.
El Juez Asociado Señor Rivera García concurrió con el resultado sin opinión escrita. La Jueza Asociada Señora Fiol Matta disintió sin opinión escrita. El Juez Asociado Señor Kolthoff Caraballo no intervino. La Jueza Asociada Señora Pabón Charneco no intervino.

 La legislatura municipal había autorizado previamente las referidas expro-piaciones mediante las Ordenanzas Municipales Núms. 21 y 229, Serie Núm. 2002-03, y Núms. 13, 50, 61 y 63, Serie 2005-06.

 El 15 de diciembre de 2006, este Tribunal denegó expedir un auto de certio-rari para revisar una determinación del Tribunal de Apelaciones en la que éste sostuvo que el municipio de Guaynabo no estaba obligado a presentar ante el tribunal una consulta de transacción pública aprobada por la Junta de Planificación como parte del procedimiento de expropiación forzosa.

 Entre los requisitos de elegibilidad que establece la Sec. 4.001 del Manual de Criterios para el Otorgamiento de Subsidios de Vivienda para Hogar Propio y Seguro en el Municipio de Guaynabo de 1997 (Manual de Subsidios de Vivienda), págs. 6-8, están:
“b. Ser ciudadano de los Estados Unidos de Norte América.
“k. Aprobada la tasación de su propiedad por el C.R.I.M. y notificada dicha tasación por el Municipio al residente dueño de la propiedad para éste poder aco-gerse al programa de subsidio deberá, ... informarle por escrito al Municipio que acepta el programa y está dispuesto a cumplir con todas y cada una de las condicio-nes impuestas en el plan de subsidio;
“l. Los residentes que no acepten la tasación debidamente endosada por el C.R.I.M. y por tal razón el Municipio tenga que expropiarle la propiedad, no serán elegibles para participar en el programa. Dándose esta situación el Municipio ini-ciará el proceso [de] expropiación forzosa, depositará la suma por la cual el C.R.I.M. tasó la propiedad como justa compensación de la misma y el dueño podrá continuar el procedimiento en el Tribunal conforme a derecho.”

 Advertimos que aunque el Tribunal de Primera Instancia menciona la “prue-ba” de los recurridos, en realidad debió hacer referencia a sus “argumentos”, ya que se trataba de una conferencia sobre el estado de los procedimientos a la cual sólo comparecieron los abogados de las partes a discutir sus respectivas mociones.

 “Orden Ejecutiva de la Gobernadora del Estado Libre Asociado de Puerto Rico para revisar las guías y procedimientos aplicables a todos los Organismos de la Rama Ejecutiva en la preparación de informes de valoración y estudios de mercado para la adquisición y arrendamiento de bienes inmuebles a ser dedicados para fines públicos, a fin de aclarar el alcance de su aplicación y modificar varias de sus dispo-siciones; y para derogar la Orden Ejecutiva Núm. 29 del 30 de junio de 2001”, en-mendada por la Orden Ejecutiva Núm. 54 de 14 de noviembre de 2007, Boletín Administrativo Núm. OE-2007-54.

 La consulta de transacción pública es una consulta diferente a la consulta de ubicación. Éstas son dos de las tres consultas que se pueden presentar en la Junta de Planificación. Véanse la See. 2.00(6) del Reglamento de Procedimientos Adjudicati-vos de la Junta de Planificación, Reglamento Núm. 6031 del Departamento de Es-tado, 12 de noviembre de 1999 (“ConsultaComprende toda solicitud para ubicación, transacción o especial”) y Sec. 3.02, supra (“Tipos de Consultas a Radicarse en la Junta: 1. Consultas de Ubicación Públicas y Privadas, 2. Consultas Especiales Pú-blicas, 3. Consultas sobre Transacciones Públicas”) (énfasis suplido); Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 7512 del Departamento de Estado, 29 de mayo de 2008.